**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ | ) |  |
| UNITED STATES OF AMERICA | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | Case No. 1:23-cr-00421-JMC |
| SIAKA TONIA MASSAQUOI, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
| _____ | ) |  |

**DEFENDANT SIAKA MASSAQUOI'S MOTION TO DISMISS ALL
CHARGES OR, IN THE ALTERNATIVE, TO COMPEL PRODUCTION
OF INFORMATION RELATING TO SELECTIVE PROSECUTION**

INTRODUCTION

Defendant Siaka Massaquoi ("MASSAQUOI") has been charged by Criminal Complaint with the following four misdemeanors:

- 18 U.S.C. § 1752(a)(1) (Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority);

- 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds);

- 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); and

- 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building).

(Complaint at 1.) Defendant MASSAQUOI hereby moves the Court for entry of an order (i) dismissing all charges against him, with prejudice, on grounds of selective prosecution (as set forth more fully hereinbelow); or (ii) at the very least, compelling the government to produce

1

information that is highly material to selective prosecution, but which the government has refused to provide in response to Defendant MASSAQUOI's discovery requests dated February 20, March 13, and May 26, 2024.[1]

In *Frederick Douglass Foundation, Inc. v. District of Columbia (FDF),* 82 F.4th 1122 (D.C. Cir. 2023), the D.C. Circuit clarified the requisite elements of the First Amendment-based selective prosecution defense which Defendant MASSAQUOI asserts here.  As will be shown *infra,* there is clear and convincing evidence that strongly supports all the elements of the First Amendment-based selective prosecution defense articulated in *FDF.*  For that reason, the Court should enter an order dismissing with prejudice all charges against Defendant MASSAQUOI.

There is also clear and convincing evidence of the administration's animus toward what it calls MAGA Republicans (including so-called "January 6 perpetrators" such as Defendant MASSAQUOI).  Therefore, the Court should also dismiss with prejudice all charges against Defendant MASSAQUOI on grounds of equal protection-based selective prosecution.  (*See* discussion at pages 10-15 and in Parts I. and II. *infra.*)

In addition, the showing made here easily meets the standards set forth in *United States v. Armstrong,* 517 U.S. 456 (1996), for the production of First Amendment- and equal protection-based selective prosecution discovery.  If the Court declines to dismiss the charges in this case outright on grounds of First Amendment-based or equal protection-based selective prosecution, it should at the very least enter an order requiring the government to produce the additional information sought by Defendant MASSAQUOI to corroborate and further support the showing made here.

---

[1]  Copies of those discovery requests are appended as Exhibits A, B, and C respectively.

PROCEDURAL BACKGROUND

The D.C. Circuit made clear in *FDF* that "[t]he executive cannot selectively enforce the law in a way that violates the Constitution[,] . . . and "although prosecutorial discretion is broad, it is not unfettered." 82 F.4th at 1137, citing *United States v. Batchelder,* 442 U.S. 114, 125 (1979), and *Wayte v. United States,* 470 U.S. 598, 608 (1985). For example, as the District Court observed in *United States v. Judd,* Case No. 1:21-cr-00040, Memorandum Opinion (D.D.C. Dec. 28, 2021) (McFadden), the government cannot base its decision to prosecute Defendant MASSAQUOI on a constitutionally impermissible standard, such as his political beliefs. Mem. Op. at 4, citing *Branch Ministries v. Rossotti,* 40 F. Supp. 2d 15, 21 (D.D.C. 1999), *aff'd,* 211 F.3d 137 (D.C. Cir. 2000).[2]  *See also FDF,* 82 F.4th at 1141 (same), discussed in more detail in Parts I. and II. *infra.*

But that is exactly what is happening here. The government is engaged in relentless and aggressive prosecution of Defendant MASSAQUOI and numerous other so-called "January 6 perpetrators" who peacefully appeared at the Capitol on January 6, 2021 and did not engage in any violence or property destruction. It is doing so after: (i) asserting considerably less serious charges against numerous pro-Hamas and anti-Kavanaugh protestors who violated the same misdemeanor statutes that have been asserted against Defendant MASSAQUOI; and (ii) ticketing and releasing them, without any criminal conviction, after payment of a token fine. The government's starkly different treatment of Defendant MASSAQUOI and similarly situated pro-Hamas and anti-Kavanaugh protestors presents a strikingly clear case of viewpoint-based selective prosecution which indisputably violates the First Amendment. Nonetheless, based on previous January 6 defendants' inability to sustain their selective prosecution defenses, and

---

[2]  A copy of the Memorandum Opinion in *Judd* is appended hereto as Exhibit D.

fearful of the effects the requested discovery will have on the Justice Department's ("DOJ's") avowed plan to prosecute as many "January 6 perpetrators" as possible, the government has declined to produce the information requested by Defendant MASSAQUOI.

On February 20 and March 13, 2024, Defendant MASSAQUOI requested production of the following categories of information:

- [A]ll information relating to whether Defendant Massaquoi was singled out or selected for prosecution not as a matter of legitimate discretion, but in whole or in part because of his race, political views, involvement in Republican politics, candidacy for political office, and/or support for Donald J. Trump or the MAGA movement.

- Data showing how many persons are similarly situated to Defendant Massaquoi in terms of the conduct they engaged in on Capitol grounds or in the Capitol Building on January 6, 2021, how many of such persons have been prosecuted by DOJ, the dates on which each one was charged, and the charges brought against each of them.

- [A]ll information that is material to whether the government is engaging in selective prosecution of Defendant Massaquoi and as many other January 6 defendants as possible by enforcing trespass and disorderly-conduct statutes against them, while not prosecuting under those same statutes similarly situated persons who entered Capitol Buildings or grounds on or after October 7, 2024 to protest in support of Hamas.

- Data showing how many persons entered Capitol Buildings or grounds to protest in favor of Hamas and are therefore similarly situated to January 6 defendants, how many of such pro-Hamas protestors have been prosecuted by DOJ, the dates on which each one was charged, and the charges brought against each of them.

- [A]ll information that is material to whether the government is engaging in selective prosecution of Defendant Massaquoi and as many other January 6 defendants as possible by enforcing federal trespass and disorderly-conduct statutes against them, while not prosecuting under 18 U.S.C. § 1752(a)(2) or (a)(3) similarly-situated persons associated with Black Lives Matter ("BLM") or Antifa protests who crossed barricades near Treasury Department buildings in Washington, D.C. on May 29, 2020, or entered Lafayette Square on May 30 or June 22, 2020, and engaged in disorderly or disruptive conduct within such proximity to the White House as to (i) impede or disrupt the orderly conduct of government business or official functions therein or (ii) obstruct or impede ingress to or egress from the White House.

- Data showing how many persons who were associated with BLM or Antifa protests and crossed barricades near Treasury Department buildings in Washington, D.C. on May 29, 2020, or entered Lafayette Square on May 30 or June 22, 2020, and disrupted the orderly conduct of government business or official functions in the White House or impeded

ingress thereto or egress therefrom, have been prosecuted by DOJ, the dates on which each one was charged, and the charges brought against each of them.

- [A]ll information that is material to whether the government is engaging in selective prosecution of Defendant Massaquoi and as many other January 6 defendants as possible by enforcing federal trespass and disorderly-conduct statutes against them (*i.e.,* 18 U.S.C. § 1752(a)(1)-(4), 40 U.S.C. § 5104(e)(2)(D), or 40 U.S.C. § 5104(e)(2)(G)) while not prosecuting under those same statutes similarly situated persons who entered the Capitol or other restricted federal buildings and disrupted the 2018 confirmation hearing of Supreme Court Justice Brett Kavanaugh.

- Data showing how many persons who entered the Capitol or other restricted federal buildings and disrupted the Kavanaugh confirmation hearing and therefore are similarly situated to January 6 defendants, have been prosecuted by DOJ, the dates on which each one was charged, and the charges brought against each of them.

(Exhibit A at 7; Exhibit B at 1-2.)

The government has not produced any of the information requested by Defendant MASSAQUOI. At the status conference on April 10, 2024, the government announced to the Court its refusal to provide the requested information and took the imprudent position that it did not need to produce any information in response to Defendant MASSAQUOI's discovery demands.[3]

In addition, on May 26, 2024, Defendant MASSAQUOI pointed out to the government that in *United States v. Judd,* Case No. 1:21-cr-00040 (TNM) (D.D.C.), it had produced extensive data relating to the government's selective prosecution of felonies under 18 U.S.C. §§ 111, 231, and 1512(c)(2), and requested that the government produce the same categories of information in the case at bar, but directing the data to prosecutions under the four misdemeanor

---

[3]  Imprudent because the information sought by Defendant MASSAQUOI will further support his First Amendment- and equal protection-based selective prosecution defenses and dismissal of the government's charges against him. Thus, the government's refusal to produce that information not only violates the standards for selective prosecution discovery set forth in *Armstrong,* 517 U.S. at 468-70, but also violates the government's obligation under *Brady v. Maryland,* 373 U.S. 83, 86-88 (1963), and its progeny, to produce evidence that would tend to exculpate him.

statutes asserted by the government against Defendant MASSAQUOI.  (Email and letter from Stephen L. Sulzer to Nialah Ferrer dated May 26, 2024, copy appended as Exhibit C.)  Defendant MASSAQUOI believes that the requested data will clearly show the more lenient treatment of pro-Hamas and anti-Kavanaugh protestors who are similarly situated to him and other non-violent January 6 protestors.

On May 28, 2024, the government refused to produce the requested information.  (*See* Email from Nialah Ferrer to Stephen L. Sulzer dated May 28, 2024, copy appended as Exhibit E.)

<u>FACTUAL BACKGROUND</u>

Defendant MASSAQUOI is a 44 year-old black male who resides in North Hollywood, California and works as an actor, producer, and screenwriter.  He is a supporter of former President Donald Trump, Vice Chair of the Los Angeles County Republican Party and a party Delegate since December 2022, ran for the California State Assembly in 2022, and is what the Biden administration characterizes as a "MAGA Republican."

Defendant MASSAQUOI was present at then-President Trump's "Stop the Steal" speech at the ellipse on January 6, 2021 and stayed until the end of the President's speech.  Defendant MASSAQUOI then returned to his hotel room at the Marriott on Pennsylvania Avenue and remained there for roughly 20-25 minutes.  Defendant MASSAQUOI then walked down to the Capitol grounds.  He was dressed in street clothes, carried no weapons of any kind with him, and did not bring any banners or flags with him to the Capitol.

Defendant MASSAQUOI did not remove any barriers to enter the Capitol grounds or the Capitol Building and did not see any signs indicating that he was entering into any restricted area.  He was never confronted or impeded by any law enforcement personnel as he approached

the west side of the Capitol and ascended steps toward a Senate Wing door.  He did not engage in any violent acts of any kind, did not damage any property, and did not assault or in any way harm any law enforcement personnel.

Defendant MASSAQUOI entered a Senate Wing doorway at approximately 3:38 PM. He stood in that doorway for a mere 71 seconds and did not proceed any deeper into the building beyond standing just inside in that doorway.  He did not seek to enter any hallways or chambers inside the Capitol beyond that Senate Wing doorway.  He conversed briefly and pleasantly with police officers who were standing just inside that doorway, did not seek to move past those officers, and did not engage in any verbally- or physically-demonstrative conduct as he stood in the doorway.  He promptly, willingly, and peacefully complied when a police officer requested that he exit the Building through the Senate Wing doorway in which he had briefly stood.  He requested others who were standing near him to join him in leaving through that doorway and several of them exited the building with him.

Defendant MASSAQUOI was present at the Capitol on January 6, 2021 solely to peacefully voice his doubts about the legitimacy of the 2020 presidential election results and support then-President Trump.  Defendant MASSAQUOI was charged with four federal criminal offenses:  (i) knowingly entering or remaining in a restricted building or grounds without authority;  (ii) disorderly and disruptive conduct in a restricted building or grounds; (iii) disorderly conduct in a Capitol Building; and (iv) parading, demonstrating, or picketing in a Capitol Building.  (Complaint at 1.)[4]

---

[4]  The facts set forth in the Factual Background above with respect to Defendant MASSAQUOI are verified in the Declaration of Siaka Massaquoi appended hereto as Exhibit F.

These are not trivial criminal charges and expose Defendant MASSAQUOI to a total of three years of imprisonment[5] and up to $20,000 in fines.[6]  *See* 18 U.S.C. § 1752(b)(2), 18 U.S.C. § 3571(b), and 40 U.S.C. § 5109(b).

In contrast to the over-aggressive prosecution of Defendant MASSAQUOI and numerous other non-violent January 6 defendants, the DOJ has taken a much more lenient approach to two other groups of protestors:  (i) pro-Hamas protestors who invaded Capitol office buildings on October 18 and December 11, 2023, and April 9, 2024, and the Capitol Building itself on December 19, 2023, to protest against the United States' support for Israel; and (ii) anti-Kavanaugh protestors who interrupted the confirmation hearing of Supreme Court Justice Brett Kavanaugh to voice their opposition before the Senate Judiciary Committee in September 2018.

For example, the DOJ has not charged with a federal crime the hundreds of persons who swarmed the Cannon House Office Building on October 18, 2023 to protest against U.S. support for Israel's military response to Hamas's deadly October 7, 2023, attack on Israel.  The pro-Hamas protestors not only assembled outside the building, but also chanted and noisily demonstrated inside the building, interfering with congressional business.  308 of them were arrested, but other than three who were charged with assaulting a police officer, they were only ticketed and their cases were resolved by a post and forfeit procedure pursuant to D.C. Code § 5-335.01. (Police Arrest Hundreds of Pro-Palestine Protesters Inside Capitol (dailysignal.com); Pro-Palestinian demonstrators take over House building, throwing Capitol security into question (fox5dc.com), appended as Exhibits G and H, respectively.)

---

[5]  One year for each charge under Section 1752(a) and six months for each charge under Section 5104(e)(2).

[6]  $5,000 for each of the four charges against him.

Section 5-335.01's post and forfeit procedure is a standard procedure used by the Capitol Police for mass demonstrations, pursuant to which the accused pays a token $50 fine and is released without conviction of any crime. *See* D.C. Code § 5-335.01(b); Father of Marine Killed in Afghanistan Arrested After Yelling During Biden's Speech - The New York Times (nytimes.com) appended as Exhibit I.

In addition, on December 11, 2023, pro-Hamas protestors demonstrated inside the Hart Senate Office Building.  49 of them were arrested, including two who were charged with resisting arrest, but most of them were only charged with crowding, obstructing, or incommoding under D.C. Code § 22-1307.  (Dozens Arrested In Latest Capitol Protest Calling For Israel-Hamas Cease-Fire (forbes.com) appended as Exhibit J.)

Similarly, on December 19, 2023, numerous pro-Hamas protestors demonstrated in the rotunda of the Capitol Building demanding that Congress call for a ceasefire in the war in Gaza. About 60 demonstrators were arrested, but they too were only charged with crowding, obstructing, or incommoding under D.C. Code § 22-1307.  (Capitol police arrest protesters who illegally overtook rotunda to demand Gaza ceasefire (msn.com) appended as Exhibit K.)

On April 9, 2024, pro-Hamas protestors repeatedly interrupted a Senate Armed Services Committee hearing inside the Dirksen Senate Office Building.  Approximately 50 of them were arrested, but they also were only charged with crowding, obstructing, or incommoding under D.C. Code § 22-1307.  (Protesters disrupt Lloyd Austin testimony as secretary denies genocide in Gaza - Washington Examiner; Capitol Police arrest pro-Palestinian protesters who swarmed Senate building (msn.com), appended as Exhibits L and M, respectively.)

Unlike the federal statutes asserted against Defendant MASSAQUOI, D.C. Code § 22-1307 carries a penalty of only 90 days imprisonment and a maximum fine of only $500.  (*See*

D.C. Code § 22-3571.01(b)(3).)   It does not appear that the DOJ prosecuted any of the pro-Hamas demonstrators at the Capitol or its office buildings under any of the four statutes asserted by the DOJ against Defendant MASSAQUOI and other non-violent January 6 protestors.

Of telling significance, in contrast to the announcement made by Attorney General Merrick Garland with respect to "all January 6 perpetrators, at any level" (discussed in more detail at pages 14-15 *infra*), there has been no announcement from the DOJ that it "will hold all [pro-Hamas] perpetrators, at any level, accountable under the law."

The DOJ also treated very differently the 70 persons who entered the Capitol building on September 4, 2018 and interfered with the confirmation hearing of Supreme Court Justice Brett Kavanaugh by shouting slogans during the Judiciary Committee confirmation proceedings.  The second day of the confirmation hearing (September 5, 2018) was disrupted in the same way.  The Capitol Police charged the demonstrators with disorderly conduct but released them using D.C. Code § 5-335.01's post and forfeiture procedure after they waived their right to a trial and paid a token $35 or $50 fine. (Shout, arrest, repeat: Inside the Kavanaugh hearing protests | AP News; Here's the Penalty Amy Schumer and Emily Ratajkowski Will Face for Arrest at Anti-Kavanaugh Protest (yahoo.com), appended as Exhibits N and O, respectively.)  A second group of anti-Kavanaugh demonstrators were arrested in the Dirksen Senate Office Building for staging a protest but were charged under D.C. Code § 22-1307 for "crowding, obstructing, or incommoding."  (*See* Exh. N at 2-3.)  The DOJ did not prosecute any of the anti-Kavanaugh protestors under the four federal statutes asserted against Defendant MASSAQUOI.

The viewpoint-based and politically-motivated intent behind the government's disparate treatment of Defendant MASSAQUOI and other peaceful January 6 protestors, on the one hand, and the pro-Hamas and anti-Kavanaugh protestors on the other hand, is discernible not only from

the information and numbers set forth above, but also from the Biden administration's own publicly-expressed condemnation of a political class it lumps together and labels as "extreme MAGA Republicans."

For example, in a speech given on September 1, 2022, the President openly condemned as "extremist" the political views of "Donald Trump and the MAGA Republicans":

> Too much of what's happening in our country today is not normal. Donald Trump and the MAGA Republicans represent an extremism that threatens the very foundations of our Republic.

> Now, I want to be very clear, very clear up front. Not every Republican, not even the majority of Republicans, are MAGA Republicans. Not every Republican embraces their extreme ideology. . . .

> But there's no question that the Republican Party today is dominated, driven and intimidated by Donald Trump and the MAGA Republicans. And that is a threat to this country.

> * * *

> And I believe it's my duty, my duty to level with you, to tell the truth no matter how difficult, no matter how painful.

> And here, in my view, is what is true: MAGA Republicans do not respect the Constitution. They do not believe in the rule of law. They do not recognize the will of the people. They refuse to accept the results of a free election, and they're working right now as I speak in state after state to give power to decide elections in America to partisans and cronies, empowering election deniers to undermine democracy itself.

> MAGA forces are determined to take this country backwards, backwards to an America where there is no right to choose, no right to privacy, no right to contraception, no right to marry who you love. They promote authoritarian leaders, and they fanned the flames of political violence that are a threat to our personal rights, to the pursuit of justice, to the rule of law, to the very soul of this country.

> They look at the mob that stormed the United States Capitol on Jan. 6, brutally attacking law enforcement, not as insurrectionists who placed a dagger at the throat of our democracy, but they look at them as patriots. And they see their MAGA failure to stop a peaceful transfer of power after the 2020 election as preparation for the 2022 and 2024 elections.

\* \* \*

But while the threat to American democracy is real, I want to say as clearly as we can, we are not powerless in the face of these threats.  We are not bystanders in this ongoing attack on democracy.  There are far more Americans, far more Americans from every background and belief, who reject the extreme MAGA ideology than those that accept it.  And folks, it's within our power, it's in our hands, yours and mine, to stop the assault on American democracy.

I believe America is at an inflection point, one of those moments that determine the shape of everything that's to come after.  And now, America must choose to move forward or to move backwards, to build a future or obsess about the past, to be a nation of hope and unity and optimism or a nation of fear, division and of darkness.

MAGA Republicans have made their choice.  They embrace anger.  They thrive on chaos.  They live, not in the light of truth but in the shadow of lies.  But together, we can choose a different path.  We can choose a better path forward to the future, . . . and we're on that path moving ahead.

\* \* \*

We're all called by duty and conscience to confront extremists who put their own pursuit of power above all else.  Democrats, independents, mainstream Republicans, we must be stronger, more determined and more committed to saving American democracy.  And MAGA Republicans are destroying American democracy.

We, the people, will not let anyone or anything tear us apart.  Today, there are dangers around us we cannot allow to prevail. . . .

\* \* \*

I will not stand by and watch . . . the will of the American people be overturned by wild conspiracy theories and baseless evidence-free claims of fraud.  I will not stand by and watch elections in this country stolen by people who simply refuse to accept that they lost.  I will not stand by and watch the most fundamental freedom in this country, the freedom to vote and have your vote counted, and be taken from you and the American people.

Look, as your president, I will defend our democracy with every fiber of my being, and I'm asking every American to join me.

(https://nytimes.com/2022/09/01/us/politics/biden-speech-transcript.html appended as Exhibit P.)

If this Court has any doubt with respect to whether President Biden's political animus toward former President Trump and so-called "MAGA Republicans" is genuine, its doubts should be eliminated by President Biden's remarks given at a Democrat fundraiser in Maryland just a few days before his September 1, 2022 speech.  On August 26, 2022, President Biden made unequivocally clear his political opposition to former President Trump and "MAGA Republicans" and heralded his intent to repress their "extreme MAGA philosophy" when President Biden unabashedly told his supporters:

> What we're seeing now is the beginning or the death knell of an extreme MAGA philosophy. It's not just Trump, it's the entire philosophy that underpins the — I'm going to say something, it's like semi-fascism.

(https://www.nbcnews.com/politics/2022-election/biden-blasts-maga-philosophy-semi-fascism-rcna44953 appended as Exhibit Q.)

The Court cannot help but see in President Biden's August 26 and September 1, 2022 speeches his committed opposition to what he sees as "extreme MAGA ideology" and his disdain for so-called "MAGA Republicans" and their political views:

- "[H]ere, in my view, is what is true:  MAGA Republicans do not respect the Constitution.  They do not believe in the rule of law.  They do not recognize the will of the people.  They refuse to accept the results of a free election . . . ."

- "MAGA forces are determined to take this country backwards, backwards to an America where there is no right to choose, no right to privacy, no right to contraception, no right to marry who you love.  They promote authoritarian leaders, and they fanned the flames of political violence that are a threat to our personal rights, to the pursuit of justice, to the rule of law, to the very soul of this country."

- "MAGA Republicans . . . embrace anger.  They thrive on chaos.  They live, not in the light of truth but in the shadow of lies."

- "It's not just Trump, it's the entire philosophy that underpins the — I'm going to say something, it's like semi-fascism."

(Exhibit P at 3, 4; Exhibit Q at 1.)

13

Those speeches also made clear President Biden's intent to take action against those he castigates as MAGA Republicans, by announcing ominously on August 26, 2022 "the death knell of an extreme MAGA philosophy."  And he has in fact acted aggressively to "confront" the group that he labels as "MAGA Republicans" and repress their "extreme MAGA philosophy." Through Attorney General Merrick Garland, the administration has declared that the DOJ will prosecute ***all*** who were present at the Capitol on January 6, 2021 ***as a class***.

For example, on January 5, 2024, AG Garland issued a statement making clear that the DOJ is prosecuting all so-called "January 6 perpetrators" as a single class, regardless of the nature and extent of their activities on January 6:

> Since the January 6 attack, the Justice Department has engaged in what has become one of the largest and most complex and resource-intensive investigations in our history.
>
> * * *
>
> So far, we have charged over 1250 individuals and obtained over 890 convictions in connection with the January 6 attack.
>
> Our work continues.
>
> ***As I said before, the Justice Department will hold all January 6 perpetrators, at any level, accountable under the law*** – whether they were present that day or were otherwise criminally responsible for the assault on our democracy.

([Office of Public Affairs | Attorney General Merrick B. Garland Delivers Remarks on Combating Violent Crime | United States Department of Justice](#) appended as Exhibit R; *see* pages 4-5 (emphasis added).)

By lumping together everyone who was at the Capitol on January 6 into a single class (*i.e.,* "January 6 perpetrators") and vowing to hold ***all of them*** "accountable under the law" – regardless of the nature and extent of their actions – AG Garland and the DOJ have implemented President Biden's (as well as the Department's own) intent to repress MAGA Republicans and

their "extreme ideology." (*See* Exh. P at 2, 4-6; Exh. R at 1, 4-5.)  As will be shown in Part II.A.2. *infra,* this is unlike anything the DOJ has done in the past to similarly situated persons who have exercised their First Amendment rights to petition the government for redress.  And, as shown above, it is driven by the Biden administration's fierce, viewpoint-driven opposition to former President Trump and his supporters, all of whom President Biden lumps together into a politically monolithic group of so-called "MAGA Republicans."

More specifically, the Biden administration, through AG Garland and his DOJ prosecutors, is aggressively pursuing more serious charges against Defendant MASSAQUOI and other non-violent January 6 protestors under 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G) after not prosecuting numerous similarly situated pro-Hamas protestors under those statutes, even though, at the very least, pro-Hamas protestors violated federal trespass and disorderly conduct laws while exercising their First Amendment rights to demonstrate and petition the government for redress.[7]

This is being done because Defendant MASSAQUOI is a member of a group identified by the DOJ – so-called "January 6 perpetrators" – whose "extreme MAGA ideology" is deeply despised by the administration.  The Biden administration is thereby using the DOJ to take viewpoint-based legal action with undeniable discriminatory effect against so-called "MAGA Republicans" such as Defendant MASSAQUOI.[8]  That is First Amendment-based selective prosecution writ large and under *FDF* is unconstitutional and unequivocally prohibited.

---

[7]  As pointed out *supra,* the charges against Defendant MASSAQUOI are non-trivial.  They expose him to a total of three years of imprisonment and fines totaling up to $20,000.

[8]  As shown in Exhibit S hereto, at least 40 other non-violent January 6 participants are being prosecuted by the DOJ under 18 U.S.C. § 1752(a) and/or 40 U.S.C. § 5104(e)(2).  Exhibit S is illustrative, not exhaustive.

ARGUMENT

I. CONTROLLING LEGAL PRINCIPLES REGARDING SELECTIVE PROSECUTION

Ordinarily, in an equal protection-based selective prosecution defense, the defendant is required to prove two elements:

- First, that the challenged prosecutorial approach had "a discriminatory effect," which requires proof that the government gave "different treatment" to persons "similarly situated" to him; and

- Second, that the challenged prosecutorial approach had "a discriminatory purpose," meaning that the government prosecuted the defendant at least in part because of his membership in and its adverse effects on an identifiable group.

*Armstrong,* 517 U.S. at 465, 470; *Wayte,* 470 U.S. at 610; *Judd,* Mem. Op. at 4-5.

However, in *FDF,* the D.C. Circuit made clear that the second element set forth above, discriminatory motive, is not an element of a free speech-based selective enforcement claim like the one at issue here.  82 F.4th at 1131, 1143, 1144-45.  The D.C. Circuit observed that the Constitution's protection for freedom of speech "applies not only to legislation, but also to enforcement of the laws" and held that the First Amendment prohibits discriminatory enforcement on the basis of political viewpoint irrespective of the government's motive.  *Id.* at 1131, 1141, 1144-45.

The Court of Appeals explained that in the summer of 2020, thousands of protestors flooded the streets of the District to proclaim "Black Lives Matter."  Over several weeks, the protestors covered streets, sidewalks, and storefronts with paint and chalk.  The markings were in open violation of the District's defacement ordinance, yet none of the protestors was arrested. During the same summer, District police officers arrested two pro-life advocates in a smaller

protest for writing "Black Pre-Born Lives Matter" on a public sidewalk using water-soluble chalk. *Id.* at 1131, 1132-35.

The organizers of the smaller protest – the Frederick Douglass Foundation and Students for Life of America (collectively "the Foundation") – sued. The Foundation alleged violations of the First and Fifth Amendments, arguing that the District's one-sided enforcement of its defacement ordinance was unconstitutional. The Foundation claimed that the District discriminated against its pro-life message, evidenced by the Mayor's commissioning of a Black Lives Matter mural (which unquestionably violated the District's defacement ordinance) and her strong public support of Planned Parenthood and its pro-choice agenda, in contrast to the District's rapid and overwhelming response to the Foundation's much smaller gathering and *de minimis* sidewalk chalking. Because the Foundation's protest was similarly situated to the Black Lives Matter protest, the Foundation asserted that viewpoint discrimination was the only explanation for the District's disparate treatment of the two groups. *Id.* at 1135.

The District Court dismissed the Foundation's complaint, concluding that the First Amendment and equal protection claims were essentially the same, and holding that the Foundation had failed to adequately alleged discriminatory intent, which the court believed was a necessary element of both claims. *Id.* at 1131, 1135. The D.C. Circuit affirmed dismissal of the Foundation's equal protection-based claim because the Foundation had not plausibly alleged invidious discrimination by District officials. *Id.* at 1131.

However, the Court of Appeals reversed dismissal of the First Amendment-based claim. The D.C. Circuit explained: "Discriminatory motive . . . is not an element of a First Amendment free speech selective enforcement claim. The First Amendment prohibits discrimination on the basis of viewpoint irrespective of the government's motive." *Id.* The D.C. Circuit found

plausible allegations in the Foundation's complaint that the District had discriminated on the basis of viewpoint in the selective enforcement of its defacement ordinance and therefore remanded for further proceedings.  *Id.*[9]

In the wake of *FDF,* to prove a First Amendment-based selective prosecution defense, Defendant MASSAQUOI must show that (i) the government gave "different treatment" to persons "similarly situated" to him; and (ii) the government's different prosecutorial conduct infringed on a constitutional right.  *Id.* at 1131, 1137-38, 1140.  As will be shown in Part II. below, it is beyond genuine dispute that both of those elements are present here.

With respect to the first element of selective prosecution, the D.C. Circuit explained in *FDF* that when another person's circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions between him and the defendant, that person is similarly situated to the defendant.  *Id.* at 1137; *see also Judd,* Mem. Op. at 4, citing *Branch Ministries,* 211 F.3d at 145.  Relevant prosecutorial factors to be assessed may include the strength of the case, its relative deterrence value, the government's enforcement priorities, and the case's relationship to the government's overall enforcement plan.  *FDF,* 82 F.4th at 1137, citing *Wayte,* 470 U.S. at 105.  There is no definitive list of relevant prosecutorial factors which must be assessed.  *Id.* at 1137.

---

[9]  The D.C. Circuit explained in *FDF* that "[d]espite the general presumption against judicial review of prosecutorial decisions, courts may review selective enforcement claims to assess whether the executive's choice of prosecution targets infringes on constitutional rights.  The executive cannot enforce the law in a way that violates the Constitution."  *Id.* at 1137.  Nonetheless, to protect legitimate exercises of prosecutorial discretion, "the target of enforcement must displace 'the presumption that a prosecutor has acted lawfully.'"  *Id.,* quoting *Reno v. American-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 489 (1999).  This requires a showing that the target was singled out for enforcement from among others similarly situated.  *Id.*

However, the D.C. Circuit also made clear in *FDF* that choosing to prosecute a defendant to discourage wider acceptance of his political viewpoint violates the First Amendment and is unequivocally forbidden.  *Id.* at 1141 ("granting waivers to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional.").  To prove a First Amendment-based selective prosecution defense, which differs from an equal protection-based selective prosecution defense, a defendant is not required to prove discriminatory intent. Viewpoint discrimination violates the First Amendment "regardless of the government's benign motive. . . ." *Id.* at 1144-45.

With respect to the second element of selective prosecution, the D.C. Circuit explained in *FDF* that the defendant must show that the government's differing prosecutorial conduct has had "a discriminatory effect" based on the defendant's and the similarly situated persons' respective political viewpoint(s).  *Id.* at 1131, 1140-41, 1146-47.

In *FDF,* the D.C. Circuit described a set of facts that is remarkably similar to the one in the case at bar.  *Id.* at 1140.  The Court of Appeals then made clear that the First Amendment's prohibition against infringement of free speech applies equally to legislative **and** executive actions, and held that "[p]rosecutorial decisions, like other government actions, cannot turn on the exercise of free speech rights."  *Id.* at 1140-41, citing *Wayte,* 470 U.S. at 608.

The *FDF* court explained:

> Specifically, selective enforcement of a neutral and facially constitutional law may run afoul of the First Amendment if the government's prosecutorial choices turn on the content or viewpoint of speech.  It is well established the government "may not regulate speech based on its substantive content or the message it conveys." . . . Restrictions based on viewpoint are especially invidious; viewpoint discrimination is "poison."  . . . It is antithetical to a free society for the government to give "one side of a debatable public question an advantage in expressing its views to the people."  . . .

*Id.* at 1141 (citations omitted). The *FDF* court added that, consistent with Supreme Court authorities, the term "viewpoint discrimination" is to be applied "in a broad sense." 82 F.4th at 1142, citing *Matal v. Tam,* 582 U.S. 218, 243 (2017) (plurality opinion).

The Court of Appeals unequivocally prohibited as unconstitutional precisely what the Biden DOJ is doing here:

> It is fundamental to our free speech rights that the government cannot pick and choose between speakers, not when regulating and not when enforcing the laws. As the Supreme Court has stated, "[g]ranting waivers to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional."

*Id.* at 1141, quoting *Thomas v. Chi. Park Dist.,* 534 U.S. 316, 325 (2002).

There are numerous pro-Hamas and anti-Kavanaugh protestors who are similarly situated to Defendant MASSAQUOI and it is beyond genuine dispute that the pro-Hamas and anti-Kavanaugh protestors' viewpoints differ significantly from Defendant MASSAQUOI's viewpoint. (*See* discussion at pages 6-10 *supra* and in Part II. *infra.*) Pro-Hamas and anti-Kavanaugh protestors have been treated more leniently than Defendant MASSAQUOI – and effectively exempted from federal misdemeanor and disorderly conduct statutes – while Defendant MASSAQUOI and other so-called "January 6 perpetrators" are being aggressively prosecuted under those statutes, with inevitable chilling effects on the latter's political views. It is incontrovertible that the government's differing prosecutorial conduct is having and will have "a discriminatory effect" based on the defendant's and the similarly situated persons' respective political viewpoint(s).

That evidence, combined with President Biden's vitriolic, viewpoint-based attacks on former President Trump and so-called "MAGA Republicans," and AG Garland's public vow to prosecute "all January 6 perpetrators" as a class regardless of the nature and extent of their

actions on January 6, provide additional damning proof of viewpoint-based discriminatory effect, as well as substantial evidence of the government's discriminatory motive in choosing to prosecute all "January 6 perpetrators."

The D.C. Circuit's *FDF* decision makes clear that the DOJ's aggressive prosecution of Defendant MASSAQUOI and other non-violent January 6 protestors, as compared to the DOJ's considerably more lenient treatment of pro-Hamas and anti-Kavanaugh protestors, is quintessential and unconstitutional viewpoint discrimination. *FDF,* 82 F.4th at 1142 ("Allowing the expression of one message while silencing another is quintessential viewpoint discrimination."), citing *Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819, 831 (1995) ("It is objectionable to exclude . . . one . . . political, economic, or social viewpoint."), and *Matal,* 582 U.S. at 243 ("viewpoint discrimination" is prohibited in a broad sense and the government may not prohibit expression of an idea even if it is "offensive or disagreeable").

II. THE GOVERNMENT'S PROSECUTION OF DEFENDANT MASSAQUOI MEETS ALL THE ELEMENTS OF A FIRST AMENDMENT-BASED SELECTIVE PROSECUTION DEFENSE

    A. The Government Is Treating Similarly Situated Persons in a Different Manner

        1. Defendant MASSAQUOI, Pro-Hamas Protestors, and Anti-Kavanaugh Protestors Are Similarly Situated

There can be no genuine dispute that Defendant MASSAQUOI, pro-Hamas protestors, and anti-Kavanaugh protestors are all similarly situated.

- All of these protestors gathered about matters of public concern and sought to disseminate a political message.

- Their activities all occurred in the same sorts of locations.

    - In the case of Defendant MASSAQUOI, just inside the Capitol Building and on Capitol grounds.

- o In the case of pro-Hamas protestors, inside the Capitol Building, inside Capitol office buildings, and on Capitol grounds.

- o In the case of anti-Kavanaugh protestors, inside a Capitol office building.

- There is strong evidence that pro-Hamas and anti-Kavanaugh protestors violated the same misdemeanor trespassing and disorderly conduct statutes that have been asserted against Defendant MASSAQUOI (*e.g.,* 18 U.S.C. §§ 1752(a)(1) and 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D), 5104(e)(2)(G)).

The various prosecutorial factors set forth in *FDF* show that pro-Hamas and anti-Kavanaugh protestors are similarly situated to Defendant MASSAQUOI and other non-violent January 6 protestors and thereby support Defendant MASSAQUOI's selective prosecution defense. As discussed below, the DOJ's different, more lenient response to the pro-Hamas and anti-Kavanaugh protestors does not correspond to the aggressive prosecution of Defendant MASSAQUOI and other so-called "January 6 perpetrators" as a class. *See FDF,* 82 F.4th at 1138. When, as here, the government's enforcement priorities and the case's relationship to the government's overall enforcement plan are an integral part of an administration's effort to discourage and suppress not just one citizen's political views, but the entire MAGA movement, those factors provide unequivocal proof of selective prosecution.

> 2. Defendant MASSAQUOI and Other Non-Violent January 6 Protestors Are Being Treated Differently From Pro-Hamas and Anti-Kavanaugh Protestors

There can be no genuine dispute that Defendant MASSAQUOI and other so-called "January 6 perpetrators" who were present at the Capitol but did not engage in any violence or property destruction are being treated differently from pro-Hamas and anti-Kavanaugh protestors.

- By leaving it to the Capitol Police to charge pro-Hamas protestors under the lenient provisions of D.C. Code § 22-1307 and to release them pursuant to D.C. Code § 5-335.01 after payment of a token fine, the DOJ has effectively exempted the pro-Hamas protestors from the significantly more onerous potential imprisonment and fines asserted against Defendant MASSAQUOI and other non-violent January 6 protestors being prosecuted under 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G).

- The same is true with respect to anti-Kavanaugh protestors.  By leaving it to the Capitol Police to charge anti-Kavanaugh protestors under the lenient provisions of D.C. Code § 22-1307 and to release them pursuant to D.C. Code § 5-335.01 after payment of a token fine, the DOJ has effectively exempted the anti-Kavanaugh protestors from the significantly more onerous potential imprisonment and fines asserted against Defendant MASSAQUOI and other non-violent January 6 protestors being prosecuted under 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G).

It makes no difference that the Biden administration was not in office during the anti-Kavanaugh protests.  The DOJ's approach to anti-Kavanaugh protestors is additional evidence that prior to January 6, the DOJ effectively gave a free pass to protestors inside Capitol buildings, even those who disrupted nationally-significant congressional proceedings.

Most significantly, in contrast to AG Garland announcing that the DOJ "will hold all January 6 perpetrators, at any level, accountable under the law", ***the DOJ has not made any announcement that it "will hold all [pro-Hamas] perpetrators, at any level, accountable under the law."***  That is incontrovertible, prima facie evidence of the significant difference in approach

being taken with respect to Defendant MASSAQUOI and other so-called "January 6 perpetrators" as compared to pro-Hamas protestors.

In short, DOJ's aggressive prosecution of "all January 6 perpetrators, at any level" stands in stark contrast to its more lenient treatment of pro-Hamas and anti-Kavanaugh protestors.

B. The Government's Different Treatment of Defendant MASSAQUOI and Other Non-Violent January 6 Participants Is Viewpoint-Based and Discriminates Against Them Solely on the Ground That They Are Believed to Be "Extreme MAGA Republicans"

As shown at pages 10-15 *supra,* the administration's efforts to prosecute and legally punish every so-called "January 6 perpetrator" to the maximum extent possible – regardless of the nature and extent of their individual actions – is expressly aimed at (i) chilling public debate and discussion over the results of the 2020 election and the election procedures that led to those results and (ii) repressing what the administration castigates as the MAGA movement's "extreme MAGA ideology."   Whether former President Trump, MAGA Republicans, and non-violent January 6 protestors are ultimately proven to be correct or were hopelessly mistaken on the question whether the 2020 election was "rigged" or "stolen," it does not diminish their right under the First Amendment to raise the issue and petition Congress for redress of their grievances – both before ***and after*** President Biden was sworn in – no matter how much the MAGA movement's views irritate and offend the President and the DOJ.

If President Biden's speeches about so-called "extreme MAGA Republicans" are taken at face value, he has gone considerably further than just voicing his own personal criticisms – he has taken aggressive action to repress his most vociferous political opponents.   In ominously heralding the "death knell" of what he characterizes as "extreme MAGA ideology," President Biden is pursuing two unconstitutional objectives:  (i) to squelch open and robust political debate questioning the legitimacy of the 2020 election and the election procedures to be followed in

2024; and (ii) to frighten as many voters as possible away from supporting former President Trump and the MAGA movement.  No matter how irritating or disagreeable "extreme MAGA ideology" may be to President Biden and the DOJ, the administration cannot selectively enforce federal trespass and disorderly conduct statutes to punish those who hold and espouse that viewpoint.  *See, e.g., Matal,* 582 U.S. at 223, 243 (plurality opinion); *FDF,* 82 F.4th at 1141-43.

To accomplish President Biden's objectives, the administration has lumped together into a single class everyone who on January 6, 2021 peacefully exercised their First Amendment right to petition, right along with those who knowingly entered prohibited areas and engaged in violence against police and property destruction.  And the Biden administration has made clear that all of them will be prosecuted to the maximum extent possible because they are "extreme MAGA Republicans" and their political views are anathema to the administration.[10]

In *Judd,* the District Court made clear that discriminatory effects can arise from prosecutors' decisions not to charge similarly situated persons, or to dismiss charges initially brought against similarly situated persons, or to charge a disfavored defendant with more serious crimes than similarly situated persons:

> The Government seems to think that the initial charges are all that matter.  Not so.  By that logic, the Government could avoid discovery of a race-based selective prosecution claim if it indicted similarly situated black and white persons, dismissed the charges against the whites, and prosecuted the black defendants to conviction or plea.  The "administration of criminal law" is not limited to an initial charging decision. . . . Nor is it so easily circumvented.

---

[10] In *United States v. Seefried,* 1:21-cr-00287 (TNM), 2024 WL 1299371, at *7 (D.D.C. Mar. 26, 2024), the District Court admonished the government for treating January 6 defendants "as a class."  The government openly admitted in *Seefried* its belief that January 6 defendants should be treated more harshly than other similarly situated defendants because of their views regarding a "fiercely contested presidential election" and a "political maelstrom."  *Id.*  The Court rightly criticized this "fact-free approach."  *Id.*

More, the Government's logic would allow it to charge similarly situated black defendants with felonies and white defendants with misdemeanors.  ***But discriminatory effects include disparities in the "crimes charged."*** . . .

Mem. Op. (Exh. C hereto) at 7-8 (citation omitted; emphasis added).

The charges asserted against Defendant MASSAQUOI (which expose him to up to three years of imprisonment and $20,000 in fines) as compared to the considerably more lenient treatment of similarly situated pro-Hamas protestors (described at pages 8-10 and in Part II.A.2. *supra*) create precisely the kind of discriminatory effects that meet the requirements of a First Amendment-based selective prosecution defense.  Prosecuting all January 6 protestors to the maximum extent possible because their political views are anathema to the administration, after treating similarly situated pro-Hamas protestors considerably more leniently, is quintessential selective prosecution that violates the First Amendment-based standard set forth in *FDF*.

The court in *FDF* made clear how important this issue is to the vitality of the First Amendment's free speech protections.  As the D.C. Circuit stated in *FDF:*

> The government may not enforce the laws in a manner that picks winners and losers in public debates.  It would undermine the First Amendment's protections for free speech if the government could enact a content-neutral law and then discriminate against disfavored viewpoints under the cover of prosecutorial discretion.  *See Hoye v. City of Oakland,* 653 F.3d 835, 854 (9th Cir. 2011) (recognizing the importance of free speech selective enforcement claims lest First Amendment guarantees become "an empty formality").

*FDF,* 82 F.4th at 1142.

For all these reasons, irrespective of this Court's thoughts with respect to the political views held by MAGA Republicans, it is incumbent on the Court to uphold the First Amendment free speech rights of Defendant MASSAQUOI and other so-called "January 6 perpetrators" who are indeed "MAGA Republicans" and peacefully made their views known on January 6.  And it is incumbent on the Court to do so by dismissing all the charges pending against Defendant

MASSAQUOI on grounds of First Amendment-based selective prosecution and putting a stop to the Biden administration's viewpoint-based discrimination against him.

Plaintiff MASSAQUOI has also presented sufficient evidence of the administration's animus toward what it calls MAGA Republicans (which includes Defendant MASSAQUOI and other non-violent January 6 protestors) to warrant the Court dismissing outright all charges against Defendant MASSAQUOI on the grounds of equal protection-based selective prosecution.

### III. DEFENDANT MASSAQUOI'S DISCOVERY REQUESTS EASILY MEET THE STANDARDS FOR PRODUCTION OF SELECTIVE PROSECUTION INFORMATION

A selective prosecution defense often requires discovery into the government's files, an effort that will divert prosecutors' resources and possibly disclose their trial strategy, *Armstrong,* 517 U.S. at 468, and this case is no different.  To minimize that burden a defendant must present "at least a colorable claim" of selective prosecution before any discovery is permitted.  *Judd,* Mem. Op. (Exh. C hereto) at 5, citing *Att'y Gen. v. Irish People, Inc.,* 684 F.2d 928, 932 (D.C. Cir. 1982).  A "colorable claim is one that presents "some evidence tending to show the existence of the essential elements" of the selective prosecution defense. *Judd,* Mem. Op. (Exh. C hereto) at 5, citing *Armstrong,* 517 U.S. at 468.

In *Judd,* the District Court pointed out that the "colorable claim" standard is "significant" and "rigorous" and is not easily met.  *Id.,* citing *Armstrong,* 517 U.S. at 464, 468.  For example, with respect to the first prong of selective prosecution the defendant must make "a credible showing of different treatment of similarly situated persons."  *Id., quoting Armstrong,* 517 U.S. at 470.  And for neither prong of selective prosecution can a defendant rely on "personal conclusions based on anecdotal evidence."  *Id.*

27

The evidence introduced at pages 6-15 *supra* and the discussion in Part II. make the required credible showing of the elements of a First Amendment-based and an equal protection-based selective prosecution defense.   With respect to First Amendment-based selective prosecution, we have presented incontrovertible evidence of viewpoint-based discrimination in the selective prosecution of Defendant MASSAQUOI and other non-violent January 6 protestors. Defendant MASSAQUOI has shown that:   (i) the DOJ is aggressively pursuing more serious charges against him and other non-violent January 6 protestors under 18 U.S.C. §§ 1752(a)(1) and 1752(a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and 5104(e)(2)(G), after not prosecuting similarly situated pro-Hamas and anti-Kavanaugh protestors under those statutes; and (ii) this is being done because Defendant MASSAQUOI is a member of a group identified by the administration – *i.e.,* so-called "January 6 perpetrators" – whose "extreme MAGA ideology" is deeply despised by the current administration.

That showing is more than sufficient grounds for the Court to dismiss the charges against Defendant MASSAQUOI on grounds of both First Amendment-based and equal protection-based selective prosecution.  If the Court were to find the publicly-available evidence presented here insufficient to dismiss on First Amendment grounds, the government should be required to produce the information sought by Defendant MASSAQUOI, including in particular the statistical information and White House and DOJ documents sought in his February 20, March 13, and May 26, 2024 discovery requests.  That information is highly material to Defendant MASSAQUOI's First Amendment-based selective prosecution defense, because it would corroborate the showing made here with respect to the administration's different treatment of similarly situated persons, as well as the discriminatory effect of the DOJ's prosecutorial choices.

In addition, in *FDF,* the D.C. Circuit held that to support an equal protection-based claim, the defendant must show that the prosecutor's enforcement decisions were "rooted in animus" against the defendant's viewpoint.    82 F.4th at 1147.    This requires evidence that the administration "was motivated by the desire to suppress some views and raise up others."  *Id.*[11]

If the Court were to decline to dismiss the charges against Defendant MASSAQUOI on grounds of equal protection-based selective prosecution, the additional evidence sought in his February 20, March 13, and May 26, 2024 requests is also highly probative with respect to the Biden administration's deep-seated animus against "MAGA Republicans" (which includes Defendant MASSAQUOI).   The requested information will not only corroborate Defendant MASSAQUOI's First Amendment-based selective prosecution defense, it will also support his equal protection-based defense, by showing President Biden's and AG Garland's desire, intent, and prosecutorial action to suppress "MAGA Republican" views.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss with prejudice all charges against Defendant MASSAQUOI on grounds of selective prosecution.  If the Court is not convinced to do so by the law and the facts set forth above, it should at the very least enter an order compelling production of the information sought in Defendant MASSAQUOI's discovery requests.

Dated:  May 31, 2024                              Respectfully submitted,

                                                  */s/ Stephen L. Sulzer*
                                                  Stephen L. Sulzer
                                                  D.C. Bar No. 340943

---

[11]   Because direct evidence of discriminatory purpose is seldom available, the courts permit defendants to use statistical disparities and other indirect evidence to show intent.  *Judd,* Mem. Op. (Exh. C hereto) at 5, citing *United States v. Khanu,* 664 F. Supp. 2d 28, 33 (D.D.C. 2009). Defendant MASSAQUOI's discovery requests seek both statistical data and direct evidence of the administration's intent.

**STEPHEN L. SULZER PLLC**
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel.: 703-899-2903 (direct)
      202-499-2301 (ofc main line)
Fax:  202-558-5101
Email:  ssulzer@sulzerpllc.com

JONATHAN GROSS
Bar ID: MD0162
2833 Smith Ave., Suite 331
Baltimore, MD 21209
Tel.: (443) 813-0141
Email:  jonathansgross@gmail.com

*Attorneys for Defendant*
*Siaka Tonia Massaquoi*

## CERTIFICATE OF SERVICE

I certify that on the 31st day of May, 2024, a true copy of the foregoing Defendant Siaka Massaquoi's Motion to Dismiss All Charges Or, in the Alternative, to Compel Production of Information Relating to Selective Prosecution has been filed electronically with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that Counsel for the United States in this case is a registered CM/ECF user and that service will be accomplished by the CM/ECF system. I further certify that the foregoing Defendant Siaka Massaquoi's Motion to Dismiss All Charges Or, in the Alternative, to Compel Production of Information Relating to Selective Prosecution was served via email on the United States through Assistant United States Attorney Nialah S. Ferrer at nialah.ferrer@usdoj.gov.

/s/ *Stephen L. Sulzer*
Stephen L. Sulzer (DC Bar No. 340943)
**STEPHEN L. SULZER PLLC**
700 12th Street, N.W., Suite 700
Washington, D.C.  20005
Tel.:  703-899-2903 (direct)
        202-499-2301 (ofc main line)
Fax:  202-558-5101
Email:  ssulzer@sulzerpllc.com

*Attorney for Defendant Siaka Tonia Massaquoi*

31