**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **Case No. 23-CR-421 (JMC)** |
| **SIAKA MASSAQUOI,** | |
| **Defendant.** | |

**RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Response in Opposition to Defendant Siaka Massaquoi's Motion to Dismiss (ECF No. 26). As set out in greater detail below, Massaquoi's motion to dismiss should be denied because each of defendant's attacks are an attempt to litigate the facts that will be addressed at trial. To the extent that the motion to dismiss is seeking additional information, the government will address this in its response for a bill of particulars.

**FACTUAL BACKGROUND**

The government relies on the statement of facts to set out the factual background relating to the Massaquoi's actions on January 6, 2021. *See* ECF No. 1-1. In summary, on January 6, Massaquoi attended the "Stop the Steal" rally, went back to his hotel, watched the news about the riot at the Capitol and decided to join rioters on the west side of the U.S. Capitol grounds. While Massaquoi was on restricted grounds, he climbed a metal bike rack to access the West Lawn. While on the West Lawn, he filmed himself speaking to other rioters, including about Congressional members hiding inside the Capitol building. As he approached the building, he filmed the shattered windows near the Senate Wing Door. At approximately 3:38 p.m., Massaquoi entered the U.S. Capitol building. At the time of his entry, multiple police officers were near the Senate Wing Door

1

in an attempt to secure the building and move rioters from the area. At approximately 3:40 p.m., Massaquoi exited the building, but continued to film the damage to the building, remain on the restricted grounds, and take pictures in front of a line of police officers. After he left the Capitol, he filmed himself walking around Washington, D.C. saying, "we have the right to walk into the Capitol."

## LEGAL STANDARD

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). An indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the Government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *See e.g.*, *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) ("[M]otions for summary judgment are creatures of civil, not criminal trials"); *Yakou*, 428 F.3d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-CR-40 (BAH), 2020 WL 6342948 at *5 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence). Accordingly, dismissal of a charge does not depend on forecasts of what the Government can prove. Instead, a criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense. *See United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination.

Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *See e.g.*, *United States v. Bingert*, 605 F. Supp. 3d 111, 118 (D.D.C. 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, No. 21-CR-453 (JDB), 2022 WL 1302880 at *2 (D.D.C. May 2, 2022) (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, No. 21-CR-454 (PLF), 2022 WL 823079 at

*4 (D.D.C. Mar. 19, 2022) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the <u>face</u> of the indictment and, more specifically, the <u>language used</u> to charge the crimes") (quoting *United States v. Sunia*, 643 F.Supp. 2d 51, 60 (D.D.C. 2009)).

## ARGUMENT

Masssaquoi's arguments are all without merit and the Court should deny his Motion to Dismiss.

### A.  The Information Sufficiently States the Offenses Charged

The fundamental problem with Massaquoi's motion is that he is arguing that the government will not be able to prove its case as trial.  The government disagrees, but more importantly, Massaquoi's argument does not go to the sufficiency of the Information, which is what is at issue here.  And the Information is sufficient. Each count of the Information provides the date and location of the acts alleged, the defendant who is accused of the acts alleged, and alleges that the defendant committed each element.[1]  (ECF No. 6 at 2).  "[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (internal quotation omitted).  That is what the Information does here.

Massaquoi's arguments instead rely on the Statement of Facts attached to the Complaint (ECF No. 1). The Statement of Facts attached to the Complaint is not the same as the Information. *See* ECF No. 6.  Whatever Massaquoi's views of the Statement of Facts may be, that is not the charging instrument in this case.  Moreover, the Statement of Facts only provides probable cause

---

[1] Federal Rule of Criminal Procedure 7(c)(1) specifically provides that a count may allege that a defendant committed an offense "by one or more specified means."  Where a statute may be violated by multiple means, the government may charge the statutory alternatives in the conjunctive (using the word "and").  *Turner v. United States*, 396 U.S. 398, 420 (1970).  "[T]he government is entitled to prove criminal acts in the disjunctive, notwithstanding that the indictment charges them in the conjunctive."  *United States v. Coughlin*, 610 F.3d 89, 106 (D.C. Cir. 2010).

to support the complaint that issued in this case at the outset. At trial, the government can (and will) introduce additional facts to meet its burden.

Massaquoi also misunderstands the elements and statutes at issue in several respects. While the precise definitions of each element should not be resolved until the Court issues jury instructions, the government clarifies some of Massaquoi's incorrect arguments here.

For example, Massaquoi suggests that he can only violate Section 1752(a)(1) by entering the Capitol Building and because he only entered for 71 seconds, he is somehow innocent. *See* ECF No. 26 at 4. Section 1752 provides in relevant part:

> (a) Whoever—
>   (1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so; [or]
>   (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

18 U.S.C. § 1752. Section 1752(a)(1) does not criminalize solely entering the building. It also applies to restricted "grounds." Moreover, it criminalizes not just entering, but entering *or remaining*.

As another example, regarding Section 1752(a)(2), Massaquoi argues that his act of entering the building was not disruptive and the government needs to show different conduct to satisfy a violation of Section 1752(a)(2). *See* ECF 26 at 4. This argument overlooks controlling caselaw. In *United States v. Alfred*, the D.C. Circuit Court held that "even passive, quiet, and nonviolent conduct can be disorderly." *United States v. Alford*, 89 F.4th 943, 950 (D.C. Cir. 2024). At trial, the government will introduce evidence at trial of Massaquoi's conduct and how it specifically violates Section 1752(a)(2), consistent with the D.C. Circuit's ruling in *Alford.* While the Court need not address this issue at this juncture because the Information sufficiently alleges a

violation of 18 U.S.C. §§ 1752(a)(1) and (2), the government offers these examples to illustrate how even if the Court were to consider Massaquoi's misdirected arguments, those arguments ignore the statutes and controlling caselaw and would fail.

### B. Section 5104 is Not Unconstitutionally Overbroad or Viewpoint Based

Massaquoi argues that Section 5104 is unconstitutional because it is an overbroad viewpoint-based regulation, and because his conduct is not in violation of the statute. *See* ECF No. 26 at 2-6. Massaquoi's arguments contradict binding precedent, have been rejected across this district, and raise issues prematurely.

Section 5104 provides in relevant part:

> (e)(2) An individual or group of individuals may not willfully and knowingly—
> (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; [or]
> (G) parade, demonstrate, or picket in any of the Capitol Buildings.

40 U.S.C. § 5104.

With regard to Section 5104(e)(2)(D), Massaquoi relies on the same argument made with respect to Section 1752(a)(2). *See* ECF 26 at 4-5. Again, this is a premature argument about the government's ability to prove its case at trial. The government has alleged that Massaquoi engaged in the type of conduct criminalized by the statute, and that is sufficient at this stage.

With regard to Section 5104(e)(2)(G), Massaquoi argues that the statute is not viewpoint neutral because it charges him for "merely entering an area with the subjective belief... that the election was stolen" *See* ECF 26 at 4-5. As the Supreme Court has explained, a "regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). To determine

whether a regulation is a content-based restriction of speech, a court considers whether the regulation, "on its face, draws distinctions based on the message a speaker conveys." *Id.* (citation omitted). Content-based regulations must survive strict scrutiny. *Id.* The D.C. Circuit recently found that "there is no serious assertion that section 5104(e)(2)(G) discriminates on the basis of viewpoint," based on "the statute's plain text." *United States v. Nassif*, 97 F.4th 968, 978 (D.C. Cir. 2024). The statute says nothing about criminalizing certain behavior only when the defendant believes an election was stolen. It "makes it unlawful to "parade, demonstrate, or picket in any of the Capitol Buildings," regardless of any viewpoint the parade, demonstration, or picket may espouse." *Id.* (citing 40 U.S.C. § 5104(e)(2)(G)). Massaquoi never mentions *Nassif.*

Massaquoi's overbreadth challenge fails for the same reason: it, too, directly contradicts *Nassif*. Under the overbreadth doctrine, a court can determine that a statute is facially unconstitutional if it prohibits a substantial amount of protected speech, even if the statute "has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied." *United States v. Nassif*, 97 F.4th at 974 (quoting *United States v. Hansen*, 599 U.S. 762, 769 (2023)). Courts use "forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Id.* (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 800 (1985)). Speech restrictions in a public forum must be "content-neutral" and "narrowly tailored to serve a significant governmental interest," and "leave open ample alternative channels of communication." *Id.* at 974-75 (quoting *Cmty. for Creative Non-Violence v. Kerrigan*, 865 F.2d 382, 387, 275 U.S. App. D.C. 163 (D.C. Cir. 1989)). In a nonpublic forum, a restriction on speech "need only be reasonable, as long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view." *Id.* at 975.

Massaquoi's overbreadth challenge is squarely foreclosed by recent controlling precedent that he never mentions. Specifically, in *United States v. Nassif,* the D.C. Circuit held that the Capitol buildings are not akin to a street, sidewalk or park which would be a public forum. *Nassif*, 97 F.4th at 975. The Court held that the Capitol buildings are a nonpublic forum, where speech can be restricted. Given this analysis, the court held that Section 5104(e)(2)(G) was constitutional as it reasonably regulates speech in a nonpublic forum. *Id.* at 980-81. The Court also held that the restriction is content neutral. *Id.* at 978. Massaquoi's argument fails under *Nassif*.

Lastly, Massaquoi argues that because he was in the building for "71 seconds," that he "did not have time" to parade, demonstrate, or picket. *See* ECF 26 at 5. Again, this argument is directed to the factfinder at trial, not the sufficiency of the Information, and the length of time Massaquoi spent inside the Capitol Building is not properly before the Court at this stage. However, the law is clear that the term "demonstrate" refers to gathering with others, or individually drawing attention to oneself, to express support for or disapproval of an identified action or viewpoint, and does not include a minimum time threshold. *See Nassif,* 97 F.4th at 980; *see also id.* at 981 ("Under any plausible definition of the term, Nassif was "demonstrating" when he joined a group of hundreds of people, many carrying signs, banners, or flags, who shouted or chanted as they descended on and entered into the Capitol seeking to halt the certification of the 2020 election."). It may also refer to conduct that would disrupt the orderly business of Congress. *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000). There is no required minimum duration. If Massaquoi wishes to argue at trial that he did not engage in activities that satisfy the definition of demonstrate, parade, or picket, he may, but that is no reason to dismiss the Information as insufficient; even addressing the merits of this premature argument, he is wrong to suggest that an individual cannot violate the statute in 71 seconds.

## <u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully requests that the Court deny Massaquoi's motion to dismiss the Information.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  *Nialah S. Ferrer*
     _____
     NIALAH S. FERRER
     Assistant United States Attorney
     New York Bar No. 5748462
     United States Attorney's Office
     District of Columbia
     (202) 557-1490
     nialah.ferrer@usdoj.gov