UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                             )   Case No. 1:23-cr-00421-JMC<br>)<br>SIAKA TONIA MASSAQUOI,        )<br>)<br>            Defendant.                       ) | |

**DEFENDANT SIAKA MASSAQUOI'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS ALL CHARGES OR,
IN THE ALTERNATIVE, TO COMPEL PRODUCTION OF
<u>INFORMATION RELATING TO SELECTIVE PROSECUTION</u>**

INTRODUCTION

Defendant Siaka Massaquoi ("MASSAQUOI") submits this memorandum in reply to the Government's Opposition to Defendant's Motion to Dismiss for Selective Prosecution (hereinafter referred to as the "Government's Opposition Memorandum" or "Docket No. 31"). The Government's Opposition Memorandum was filed-out-of time on June 21, 2024 in violation of Local Criminal Rule 47(b), without any excuse or explanation, and without seeking leave of Court for the out-of-time filing. Defendant MASSAQUOI has filed, simultaneously with this reply memorandum, a motion to strike the Government's Opposition Memorandum and to grant as conceded MASSAQUOI's underlying motion to dismiss all charges against him with prejudice. If the Court accepts the Government's Opposition Memorandum into the record, the government's arguments opposing MASSAQUOI's Selective Prosecution Motion should be rejected on the merits, and MASSAQUOI's motion to dismiss for selective prosecution should be granted.

1

In its out-of-time opposition memorandum, the government contends that it is proper to treat Defendant MASSAQUOI more harshly than pro-Hamas and anti-Kavanaugh protestors, arguing that Defendant MASSAQUOI has not shown that he is similarly situated to them. (Docket No. 31 at 1-4, 8-14.) In a strained attempt to support its position, the government tries to evade three critical points:

(1) The pro-Hamas protestors and the anti-Kavanaugh protestors committed the same basic crime in substantially the same manner as Defendant MASSAQUOI allegedly did;

(2) Shorn of the government's inflammatory rhetoric about January 6 and its legally untenable argument assigning responsibility to Defendant MASSAQUOI for others' actions, the evidence with respect to the anti-Kavanaugh and pro-Hamas protestors is as strong as the relevant evidence the government claims to have against Defendant MASSAQUOI; and

(3) Prosecuting the pro-Hamas protestors would have at least the same deterrence value as does prosecution of Defendant MASSAQUOI and would relate in the same way to the government's enforcement priorities and plan.

For the foregoing reasons, there is no distinguishable legitimate prosecutorial factor that would justify making different prosecutorial decisions between Defendant MASSAQUOI and the pro-Hamas and anti-Kavanaugh protestors.

The government also asserts that the difference in treatment of Defendant MASSAQUOI and the pro-Hamas and anti-Kavanaugh protestors has nothing to do with Defendant MASSAQUOI's political viewpoint. (Docket No. 31 at 7-8, 14-15.) When, as here, the only legally and factually cognizable difference between Defendant MASSAQUOI and the pro-Hamas protestors is that, unlike the pro-Hamas protestors' viewpoint, Defendant MASSAQUOI's political views are anathema to the administration and the DOJ, the difference

in treatment between them further demonstrates Defendant MASSAQUOI's point that the DOJ is engaged viewpoint-based selective prosecution.

As shown more fully *infra,* the positions taken in the Government's Opposition Memorandum are not only legally and factually unsustainable, but further support Defendant MASSAQUOI's showing of viewpoint-based selective prosecution.

ARGUMENT

I. Defendant MASSAQUOI Has Shown By Clear and Convincing Evidence That He Is Similarly Situated to the Pro-Hamas and Anti-Kavanaugh Protestors

The parties do not disagree that to show selective prosecution in violation of the First Amendment, Defendant MASSAQUOI must show that he is similarly situated to another group which has been treated less harshly by the DOJ and that the difference in treatment disadvantages or discriminates against his political viewpoint. *Compare* MASSAQUOI's Selective Prosecution Motion (Docket No. 28 at 16-21) *with* Government's Opposition Memorandum (Docket No. 31 at 1-2, 5-6). The parties also do not disagree on the standards articulated in *United States v. Stone,* 394 F. Supp. 3d 1 (D.D.C. 2019), and *Frederick Douglass Foundation, Inc. v. District of Columbia,* 82 F.4th 1122 (D.C. Cir. 2023), for determining whether a movant is similarly situated to other persons who have been treated less harshly by the DOJ.

In *Stone,* the Court explained that an individual may be similarly situated to the defendant if

> he committed the same basic crime in substantially the same manner as the defendant – so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan – and against whom the evidence was as strong or stronger than that against the defendant.

*Stone,* 394 F. Supp. 3d at 31, quoting *United States v. Smith,* 231 F.3d 800, 810 (11th Cir. 2000).

In *Frederick Douglass Foundation,* the D.C. Circuit held that:

> Individuals "are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them."

*Frederick Douglass Foundation,* 82 F.4th at 1137, quoting *Branch Ministries v. Rossotti,* 211 F.3d 137, 145 (D.C. Cir. 2000).

The government and Defendant MASSAQUOI part company with respect to two issues: (i) whether Defendant MASSAQUOI, the pro-Hamas protestors, and the anti-Kavanaugh protestors are similarly situated as that term is used in the case law and (ii) whether the difference in treatment between them implicates Defendant MASSAQUOI's political views as a MAGA Republican.  (*Compare* MASSAQUOI's Selective Prosecution Motion at 21-27 *with* Government's Opposition Memorandum at 1-4, 7-8, 14-15.)

Contrary to the government's arguments trying to distinguish Defendant MASSAQUOI from the pro-Hamas and anti-Kavanaugh protestors, all of them are similarly situated for the following reasons:

First, the pro-Hamas protestors and the anti-Kavanaugh protestors committed the same basic crime in substantially the same manner as Defendant MASSAQUOI allegedly did.  At bottom, three of the four misdemeanors charged against Defendant MASSAQUOI (18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G)) prohibit protesting in a disorderly or disruptive manner in areas that are off-limits to that conduct.  Just like Defendant MASSAQUOI is accused of doing, the pro-Hamas and anti-Kavanaugh protestors protested in a disorderly or disruptive manner in the same prohibited Capitol building(s) and grounds locations.  Thus, it is beyond genuine dispute that the pro-Hamas and anti-Kavanaugh protestors committed

the same basic crimes in substantially the same manner as Defendant MASSAQUOI allegedly has done.[1]

Second, the evidence against Defendant MASSAQUOI's comparators is as strong as the evidence the government claims to have against him. While the evidence with respect to Defendant MASSAQUOI and the pro-Hamas and anti-Kavanaugh protestors may be insufficient to prove the four misdemeanors asserted against MASSAQUOI, the evidence against the pro-Hamas and anti-Kavanaugh protestors with respect to the elements of those misdemeanors is as strong as the evidence the government claims to have against MASSAQUOI.

For example, on October 18, 2023, thousands of pro-Hamas activists gathered inside and outside the Cannon House Office Building during a business day for the purpose of "shutting down Capitol Hill" over the U.S. government's support for Israel. (*See* https://forward.com/fast-

---

[1] The numerous similarities between Defendant MASSAQUOI's alleged conduct and the comparators' conduct were shown in Defendant MASSAQUOI's Selective Prosecution Motion, similarities which the Government's Opposition Memorandum effectively ignores:

First, Defendant MASSAQUOI, the pro-Hamas protestors, and the anti-Kavanaugh protestors all gathered about matters of public concern and sought to disseminate a political message, an important similarity which the government conveniently ignores.

Second, their activities all occurred in the same sorts of locations. Like Defendant MASSAQUOI, pro-Hamas and anti-Kavanaugh protestors all entered Capitol buildings and grounds during workdays when Congresspersons, Senators, and staffers were present.

Third, Defendant MASSAQUOI, the pro-Hamas protestors, and the anti-Kavanaugh protestors all could be said to have engaged in prohibited protest activities in a manner that allegedly interfered with official congressional proceedings – in the case of MASSAQUOI, the 2020 election's electoral vote count, in the case of the pro-Hamas protestors, a Senate Armed Services Committee hearing in the Dirksen Senate Office Building on April 9, 2024 (*see, e.g.,* Gaza protesters repeatedly interrupt Senate hearing with Pentagon leaders (thehill.com)) (copy appended as Exhibit "A")), as well as work inside the Cannon House Office Building on October 18, 2024 (*see* discussion in the text bridging pages 5-6), and in the case of the anti-Kavanaugh protestors, the nationally-significant Senate Judiciary Committee confirmation hearings and the full Senate vote on Justice Brett Kavanaugh's nomination to the Supreme Court (*see* discussion on pages 6-7 *infra*).

forward/565741/capitol-protest-jewish-groups-gaza-israel-marjorie-taylor-greene/ (copy appended as Exhibit "B".)  While this protest may not have been quite as violent and physically destructive to Capitol Hill buildings as was January 6, it was unquestionably large and loud and disrupted a significant amount of congressional business, as was intended by the protestors.[2]

Even if the pro-Hamas protestors did not enter into restricted areas within the meaning of 18 U.S.C. § 1752(c)(1)(C), the pro-Hamas protestors were unquestionably chargeable under 40 U.S.C. §§ 5104(e)(2)(D) and 5104(e)(2)(G) for their disorderly and disruptive conduct inside the Capitol and its office buildings and on Capitol building grounds.  As shown above, the evidence with respect to the elements of those misdemeanors is at least as strong against the pro-Hamas protestors as the relevant evidence the government claims to have against Defendant MASSAQUOI.

The government also challenges the strength of the evidence against the anti-Kavanaugh protestors by arguing that they did not enter a restricted area or interfere with congressional proceedings of great significance.  (Government's Opposition Memorandum at 3, 11.)  The government is badly mistaken on both points.

The Senate Office building(s) where the Kavanaugh confirmation hearings were held should be viewed as "restricted areas" under 18 U.S.C. § 1752(c)(1)(C), because the Kavanaugh confirmation hearings were an event of national significance to all concerned – to the nominee, the Judiciary Committee members, the citizens and press in attendance, and to the protestors

---

[2] Defendant MASSAQUOI urges the Court to hit "control" and click on the link provided in the text above in order to view direct evidence of the loud, disruptive, and large-scale demonstration staged on October 18, 2023 by pro-Hamas protestors.  The video in that link should be viewed in its entirety to get a good sense of the scale and disruptiveness of the protest.  The video includes (ironically) at least one apparently uncharged protestor talking (at 2:48 to 3:30) about members of Congress who are inside the building, as the government accuses Defendant MASSAQUOI of doing on January 6. (Government's Opposition Memorandum at 3.)

6

themselves, who would unquestionably have said that the country's entire future rode on the outcome of the hearings.

Even more to the point, the national significance of Justice Kavanaugh's Senate confirmation proceedings and the statutorily restricted aspect of the location entered by the anti-Kavanaugh protestors are incontrovertibly shown by the fact that the U.S. Capitol Police erected barriers to cordon off the Capitol steps on the eve of Justice Kavanaugh's Senate confirmation vote. (*Kavanaugh Protesters Ignore Capitol Barricades Ahead of Saturday Vote,* Roll Call, Oct. 6, 2019, https://www.rollcall.com/2018/10/06/kavanaugh-protesters-ignore-capitol-barricades-ahead-of-saturday-vote/, copy appended as Exhibit "C.")  It is undisputed that numerous (uncharged) anti-Kavanaugh protestors broke through the Capitol Police barricades to occupy the Capitol steps on the eve of that vote (*id.*), fatally undermining the government's contention that the anti-Kavanaugh protestors' conduct differed materially from Defendant MASSAQUOI's alleged conduct for purposes of charges under Section 1752(a).

In sum, the evidence against the pro-Hamas and anti-Kavanaugh protestors, while it may not precisely duplicate the evidence against Defendant MASSAQUOI, is at least as strong as the evidence the government claims to have against Defendant MASSAQUOI.

Third, prosecuting the pro-Hamas protestors would have at least the same deterrence value as does prosecution of Defendant MASSAQUOI, and would relate in the same way to the government's enforcement priorities and plan, which presumably is (or at least ought to be) to deter disruptive demonstrations in Capitol buildings and grounds aimed at influencing Congress's performance of its duties.  Given the repetitious and highly disruptive nature of the pro-Hamas protests, it is readily apparent that the prosecution of Defendant MASSAQUOI (and numerous other non-violent January 6 protestors) has not come close to deterring large scale,

disruptive demonstrations in Capitol buildings or grounds. If that kind of disruptive conduct is ever to be effectively discouraged by the DOJ, the deterrence value of prosecuting the pro-Hamas protestors – particularly close on the heels of the January 6 protest – is unquestionably as great as the deterrent value of prosecuting Defendant MASSAQUOI and other non-violent January 6 protestors.

Fourth, and for the foregoing reasons, there is no distinguishable legitimate prosecutorial factor that would justify making different prosecutorial decisions between Defendant MASSAQUOI and the pro-Hamas and anti-Kavanaugh protestors.

All of the above, taken together, shows that the pro-Hamas and anti-Kavanaugh protestors appear to have committed the same basic crime(s) in substantially the same manner as are alleged against Defendant MASSAQUOI. This is sufficient to meet any application of the similarly situated analysis that is not tainted by the government's impermissible reliance on guilt by association.[3]

II. Defendant MASSAQUOI's Showing That He Is Similarly Situated to the Pro-Hamas Protestors Stands Unrebutted by Admissible Evidence

The government raises several points to try to differentiate Defendant MASSAQUOI from his comparators, all of which are factually and/or legally unsustainable and insufficient to differentiate them for purposes of selective prosecution analysis.

First, the government argues that some of the January 6 protestors engaged in violent clashes with police and did physical damage to gain entry to the Capitol building, and that these actions caused evacuation of the House and Senate chambers. (Government's Opposition

---

[3] The government's unconstitutional resort to guilt by association is discussed at pages 9-12 below.

8

Memorandum at 3, 8-14.)  The government has not presented even a shred of evidence that Defendant MASSAQUOI engaged in any violence or did any damage on January 6.[4]

Second, the government attempts to differentiate Defendant MASSAQUOI's case on the ground that he was part of a MAGA effort to preclude Congress's electoral vote count. (Government's Opposition Memorandum at 3, 8-9, 12.)  It is important to note that if the DOJ

---

[4] The Government's Opposition Memorandum asserts that MASSAQUOI ignored warning signs to turn back, used a metal bike rack to climb onto the West Lawn, spoke to other rioters about members hiding in the building, and took pictures and videos in front of a police line as they were attempting to secure and clear the area.  (Docket No. 31 at 9.)  These assertions add quite a lot of government spin to the facts.

By the time MASSAQUOI arrived at the Capitol grounds, the fences with their warning signs and the bicycle rack barriers that had cordoned off the Capitol grounds earlier in the day had been swept away – unbeknownst to MASSAQUOI – by the crowds of January 6 protestors that preceded him.

The bike rack that MASSAQUOI stepped onto when ascending to the West Lawn had been put in place by others long before MASSAQUOI got there and was no longer identifiable as a warning not to enter the West Lawn.  In short, MASSAQUOI had an unimpeded path to the Capitol Building.

MASSAQUOI's brief exchange with other protestors to the effect that members were inside the Capitol was itself neither violent, nor destructive, and the government does not allege that whatever was said in any way contributed to any violence or destruction at the Capitol.

Finally, when MASSAQUOI entered the Senate Wing door, he immediately encountered a small group of police located just inside the doorway.  MASSAQUOI immediately stopped and went no further into the building.  He had a polite conversation with the officers lasting perhaps a single minute and turned around and left the building immediately, through the door he had entered, when a police officer asked him to do so.  He also encouraged others to exit with him, which they did.

After leaving the building, MASSAQUOI encountered a short line of police who were facing the Capitol Building.  He made a few brief and polite observations, was given no instructions or commands to leave the building or grounds, and departed for his hotel.

It is a stretch for the government to claim, as it does in its opposition memorandum, that ***MASSAQUOI's*** actions on January 6 were violent or destructive, or were any more disruptive than the actions of pro-Hamas and anti-Kavanaugh protestors who demonstrated inside Capitol buildings and on Capitol grounds.

could prove that Defendant MASSAQUOI individually, or by working with others, was himself seeking to preclude the electoral vote count, it would have charged him with rebellion or insurrection in violation of 18 U.S.C. § 2383, corruptly attempting to obstruct or impede an official proceeding in violation of 18 U.S.C. § 1512(c)(2), conspiring to violate either of those statutes in violation of 18 U.S.C. §§ 371 or 1349, and/or aiding and abetting in violation of 18 U.S.C. § 2.

The DOJ very notably has not brought any of those charges against Defendant MASSAQUOI. (Information (Docket No. 6); Complaint and Statement of Facts (Docket No. 1).) Thus, without using the prohibited technique of guilt by association (discussed below), the only legally-cognizable and factually-sustainable assertion DOJ can make about the reason for *his* presence at the Capitol on January 6 is that MASSAQUOI was there to voice his support for his political viewpoint – just like the pro-Hamas and anti-Kavanaugh protestors who have not been prosecuted by the DOJ.

In a strained effort to differentiate MASSAQUOI from the anti-Kavanaugh and pro-Hamas protestors who are similarly situated to him, the government seeks to revive the technique of guilt by association. Guilt by association violates the fundamental tenet of criminal law that individual responsibility should be the basis for criminal liability. It is long-discredited by the Supreme Court as a basis for assigning criminal liability to an individual.

For example, in *Scales v. United States,* 367 U.S. 203 (1961), the Supreme Court cautioned:

> In our jurisprudence guilt is personal, and when the imposition of punishment on a status or on conduct can only be justified by reference to the relationship of that status or conduct to other concededly criminal activity (here advocacy of violent overthrow), that relationship must be sufficiently substantial to satisfy the concept of personal guilt in order to withstand attack under the Due Process Clause of the Fifth Amendment. Membership, without more, in an

organization engaged in illegal advocacy . . . [is not] recognized by this Court to be such a relationship.

*Scales,* 367 U.S. at 224-25 (footnote omitted).

Similarly, in *Noto v. United States,* 367 U.S. 291 (1961), the Court warned against the use of guilt by association as a technique for assigning criminal responsibility to individuals:

> [I]t should also be said that this element of the membership crime [advocating violent action to forcibly overthrow the government], like its others, must be judged *strictissimi juris,* for otherwise there is a danger that one in sympathy with the legitimate aims of such an organization [*i.e.,* the Communist Party], but not specifically intending to accomplish them by resort to violence, might be punished for his adherence to lawful and constitutionally protected purposes, because of other and unprotected purposes which he does not necessarily share.

*Noto,* 367 U.S. at 299-300.[5]

Because no charge has been made against MASSAQUOI for conspiring to impede Congress's electoral vote count on January 6, 2021, it is particularly inappropriate for the government to try to assign to MASSAQUOI vicarious criminal responsibility for the actions of others and circumstances not intended or directly caused by him.[6] The government's

---

[5] The views expressed by Justice Douglas in *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123 (1951), which strongly criticize and warn against assigning guilt by association, are particularly pertinent here:

> The technique is one of guilt by association – one of the most odious institutions of history. The fact that the technique of guilt by association was used in the prosecutions at Nuremburg does not make it congenial to our constitutional scheme. Guilt under our system of government is personal. When we make guilt vicarious we borrow from systems alien to ours and ape our enemies. Those short-cuts may at times seem to serve noble aims; but we depreciate ourselves by indulging in them.

341 U.S. at 178-89 (Douglas, J, concurring) (footnote omitted).

[6] According to the government's own description of events, MASSAQUOI did not set foot near or in the Capitol Building until 3:38 PM (well after the electoral vote count was suspended and the House and Senate chambers had been evacuated). He stood just inside a Senate wing

inflammatory attempt to assign responsibility to Defendant MASSAQUOI for what was done by riotous January 6 protestors (and to hold him responsible for the results of others' actions) should be rejected as a pernicious attempt to assign guilt by association.

The numerous D.C. district court cases relied on by the government which reject selective prosecution arguments because of the overall scope and character of the January 6 riot (Government's Opposition Memorandum at 1 n. 1, 8-14) all suffer from the same flaw – they treat all January 6 protestors alike, regardless of their individual actions, and thereby crash head on into the Supreme Court's repeated prohibition against guilt by association. Under the principles set forth in *Scales, Noto,* and cases like them,[7] the outrage that other Judges in this district have expressed with respect to other January 6 protestors' intentions and conduct most certainly does not justify the government's position that Defendant MASSAQUOI should be treated like all other January 6 defendants for purposes of selective prosecution analysis.

Third, without repeating here all of the points made in Part I. *supra,* the government is wrong in arguing that the conduct alleged in the government's Information and Complaint against Defendant MASSAQUOI is materially different from the conduct engaged in by the pro-Hamas and anti-Kavanaugh protestors. (*See* discussion in Part I. *supra.*)

---

doorway in a peaceable manner for little more than a minute, and politely and cooperatively left the building when asked to do so. He did not meaningfully contribute to delay in clearing the building or restoring order. Thus, contrary to the dark picture of MASSAQUOI painted in the Government's Opposition Memorandum, he is not the scheming insurrectionist who the government bombastically tries to blame for interfering with the orderly transfer of power.

[7] *E.g., NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 918-19 (1982) (in express accord with *Scales* and *Noto*). *See also Wieman v. Updegraff,* 344 U.S. 183, 191 (1952) ("Indiscriminate classification of innocent with knowing activity must fall as an assertion of arbitrary power.").

Fourth, the government observes that because Kavanaugh was a Trump appointee, a DOJ decision to treat anti-Kavanaugh protestors leniently would not be indicative of viewpoint discrimination. (Government's Opposition Memorandum at 11.) The Government's Opposition Memorandum conveniently misses the point. The DOJ's lenient treatment of anti-Kavanaugh protestors is evidence of the DOJ's baseline/default approach to exercises of First Amendment rights in restricted areas or areas where important congressional proceedings are being conducted. It shows that more aggressively prosecuting MASSAQUOI under the four misdemeanor statutes asserted against him (but not against the anti-Kavanaugh protestors) *is* much harsher treatment driven by viewpoint discrimination against MAGA Republicans, an indisputably disfavored group despised by the Biden administration.

At bottom, by mischaracterizing Defendant MASSAQUOI's actions on January 6 and his reason for briefly entering the Capitol, the Government's Opposition Memorandum seeks to elicit personal animus against him and encourage the constitutionally-impermissible application of guilt by association. Notwithstanding the government's factually-unfounded and legally-misplaced efforts in its opposition memorandum, it has failed to rebut Defendant MASSAQUOI's showing that he and his comparators are similarly situated.

### III. The Difference in Treatment Between Defendant MASSAQUOI and Similarly Situated Pro-Hamas Protestors Is Further Proof That the DOJ Is Engaged in Viewpoint-Based Selective Prosecution

We have convincingly shown in MASSAQUOI's Selective Prosecution Motion that MASSAQUOI's political viewpoint is anathema to the DOJ and the Biden administration. In contrast, the administration (and its DOJ) have not expressed any criticism of pro-Hamas protestors' demand that Israel cease fire in Gaza. The only legally and factually cognizable difference between Defendant MASSAQUOI and the pro-Hamas protestors is that, unlike the

13

pro-Hamas protestors' political views, Defendant MASSAQUOI's political views are anathema to the administration and the DOJ. In these circumstances, the difference in treatment between them only further demonstrates that the DOJ is engaged viewpoint-based selective prosecution.

In sum, the DOJ's decision to prosecute MASSAQUOI for the four misdemeanors charged here, while declining to assert any of those same statutes against similarly situated groups such as the pro-Hamas and anti-Kavanaugh protestors, is quintessential viewpoint-based prosecution in violation of the First Amendment and Fifth Amendment equal protection.

## CONCLUSION

Even if we were to accept for purposes of this discussion that some January 6 protestors' violent and destructive entry into the Capitol was intended to and did interfere with Congress's electoral vote count (and thus the transfer of power to the Biden administration), there is no allegation in the Information or Complaint or any evidence that Defendant MASSAQUOI engaged in violent or destructive acts on January 6 or conspired with others to interfere with Congress's electoral vote count. Shorn of its inflammatory rhetoric, the government's purported justification for prosecuting Defendant MASSAQUOI is that he is not similarly situated to his comparators because he allegedly entered a restricted area to interfere with a congressional proceeding of national importance, while his comparators, the government claims, did not. But, as shown at pages 6-7 above, the anti-Kavanaugh protestors did exactly that and thus are similarly situated to MASSAQUOI. The pro-HAMAS protestors are also similarly situated to MASSAQUOI, at least with respect to the charges brought against MASSAQUOI under 40 U.S.C. §§ 5104(e)(2)(D) and (G).

To prosecute MASSAQUOI under the four trespass and disorderly conduct statutes asserted here because of the violent and destructive acts of other January 6 protestors reverts to

the emotionally tempting but constitutionally odious technique of assigning guilt by association. And to prosecute MASSAQUOI under those statutes for his association with MAGA Republicans – whose political viewpoint is despised by the administration – when similarly situated comparators have been released without criminal prosecution, is quintessential selective prosecution.  In so doing, the administration and its DOJ are borrowing politically repressive techniques from the enemies of democracy and are not just violating, but unabashedly trashing, the United States Constitution.

For the foregoing reasons, the Court should enter an order dismissing with prejudice all charges against Defendant MASSAQUOI as violations of *Frederick Douglass Foundation's* prohibition against viewpoint-based selective prosecution.  If the Court is not yet convinced to do so by the law and the facts set forth above, the Court should at the very least enter an order compelling the government to produce the information requested in Defendant MASSAQUOI's discovery requests.

Because of the complexity of the issues presented here and the potential alternative paths the Court might choose to resolve them, Defendant MASSAQUOI respectfully begs the Court's indulgence for not submitting a proposed order as called for by Local Criminal Rule 47(c).

Dated:  June 28, 2024                                         Respectfully submitted,

*/s/ Stephen L. Sulzer*
Stephen L. Sulzer
D.C. Bar No. 340943
**STEPHEN L. SULZER PLLC**
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel.: 703-899-2903 (direct)
         202-499-2301 (ofc main line)
Fax:  202-558-5101
Email:  ssulzer@sulzerpllc.com

JONATHAN GROSS  
Bar ID: MD0162  
2833 Smith Ave., Suite 331  
Baltimore, MD 21209  
Tel.: (443) 813-0141  
Email: jonathansgross@gmail.com

*Attorneys for Defendant*
*Siaka Tonia Massaquoi*

**CERTIFICATE OF SERVICE**

I certify that on the 28th day of June 2024, a true copy of the foregoing Defendant Siaka Massaquoi's Reply Memorandum in Support of Motion to Dismiss All Charges Or, In the Alternative, to Compel Production of Information Relating to Selective Prosecution has been filed electronically with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that Counsel for the United States in this case is a registered CM/ECF user and that service will be accomplished by the CM/ECF system. I further certify that the foregoing Defendant Siaka Massaquoi's Reply Memorandum in Support of Motion to Dismiss All Charges Or, In the Alternative, to Compel Production of Information Relating to Selective Prosecution was served via email on the United States through Assistant United States Attorney Nialah S. Ferrer at nialah.ferrer@usdoj.gov.

/s/ *Stephen L. Sulzer*
Stephen L. Sulzer (DC Bar No. 340943)
**STEPHEN L. SULZER PLLC**
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel.: 703-899-2903 (direct)
        202-499-2301 (ofc main line)
Fax: 202-558-5101
Email: ssulzer@sulzerpllc.com

*Attorney for Defendant Siaka Tonia Massaquoi*