UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Case No. 1:23-CR-421 (JMC) |
| | ) | |
| **SIAKA TONIA MASSAQUOI,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### DEFENDANT SIAKA MASSAQUOI'S PRETRIAL STATEMENT

Pursuant to the Court's Scheduling Order (ECF No. 42), Defendant Siaka Massaquoi ("MASSAQUOI") submits the following pretrial statement. This information was submitted to the government for inclusion in the parties' Joint Pretrial Statement but the government refused to include it, so Defendant MASSAQUOI is submitting it separately here.

A copy of the government's proposed legal instructions – which includes Defendant MASSAQUOI's objections to those instructions and his suggested revisions to them – has been attached to this pretrial statement as Exhibit A. It became necessary to include Exhibit A with this Pretrial Statement because of the government's shenanigans in assembling what it calls the parties "joint" pretrial statement.[1]

---

[1] The government included in its initial draft of the so-called joint pretrial statement an Exhibit A setting forth a set of "proposed legal instructions." The government based its approach on its reading of the Court's July 29, 2024 Pretrial Order (ECF No. 42) as calling for the parties to submit proposed legal instructions on which they agree and objections to those on which they could not agree. The government's reliance on ECF No. 42 was misplaced because that aspect of the Court's Order was clearly intended to apply in cases that will be tried to a jury. This case will be tried

1

I.     The Charges Against Defendant MASSAQUOI

Defendant MASSAQUOI has been charged with the following four misdemeanors:

**Count One**

Knowingly entering and remaining in a restricted building and grounds, that is, any posted cordoned off, and otherwise restricted area within the Capitol and its grounds where the Vice President was and would be temporarily visiting, without lawful authority to do so, in alleged violation of 18 U.S.C. § 1752(a)(1).

**Count Two**

Knowingly and with intent to impede and disrupt the orderly conduct of Government business and official functions, engaging in disorderly and disruptive conduct in and within such proximity to a restricted building and grounds so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions, in alleged violation of 18 U.S.C. § 1752(a)(2).

---

without a jury, which Defendant MASSAQUOI pointed out to the government. Notwithstanding Defendant MASSAQUOI's objection to the government's procedure, and apparently insisting on sticking with its interpretation of ECF No. 42, the government invited Defendant MASSAQUOI to submit for inclusion in the joint pretrial statement his objections to the government's proposed instructions, apparently thinking that Defendant MASSAQUOI would not have enough time to prepare a cogent set of objections and his own suggestions for so-called "legal instructions." When the government was provided with a revised "Exhibit A" for the joint pretrial statement – setting forth Defendant MASSAQUOI's suggested revisions to the government's proposed legal instructions and a set of objections that apparently causes the government considerable indigestion – the government arbitrarily refused to include Defendant MASSAQUOI's inputs in the so-called "joint" pretrial statement. After relying on the Court's pretrial order to justify including the government's preferred content in the joint pretrial statement, the government has now refused to comply with ECF No. 42's provision calling for the inclusion of Defendant MASSAQUOI's objections and his suggested revisions to the government's proposed legal instructions. The inconsistency in the government's approach is astonishing, to say the least. And it necessitates inclusion herewith as Exhibit A the government's proposed legal instructions juxtaposed with Defendant MASSAQUOI's objections to them and his suggested revisions to the government's legal instructions.

**Count Three**

Willfully and knowingly engaging in disorderly and disruptive conduct within the United States Capitol Grounds and in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress and either House of Congress, and the orderly conduct in that building of a hearing before or any deliberation of, a committee of Congress or either House of Congress , in alleged violation of 40 U.S.C. § 5104(e)(2)(D).

**Count Four**

Willfully and knowingly parading, demonstrating, and picketing in any United States Capitol building in alleged violation of 40 U.S.C. § 5104(e)(2)(G).

II.   Elements to Be Proven by the Government Under Section 1752(a)

A. Section 1752(a)(1)

By its use of the term "knowingly" at the outset of the statute, 18 U.S.C. § 1752(a)(1) requires proof beyond a reasonable doubt of at least two critical elements:

- First, that Defendant MASSAQUOI knew he was entering or remaining in a restricted building or grounds; and

- Second, that Defendant MASSAQUOI knew that he lacked lawful authority to enter or remain in the restricted building or grounds.

*E.g., United States v. Griffin,* 119 F.4th 1001, 1010, 1011, 1012 (D.C. Cir. 2024) (Section 1752(a)(1) requires that the defendant knew he was entering a restricted area without lawful authority to do so); *United States v. Groseclose,* Case No. 21-cr-311-CRC, Slip Op. at 5-9 (D.D.C. Jan. 5, 2024) (requiring that the defendant knew that he was entering and remaining in a restricted building or grounds); *United States v. Samsel,* Case No. 1:21-cr-00537-JMC, Findings of Fact and Conclusions of Law, ECF No. 345 at 31-33 (D.D.C. Feb. 9, 2024) (Section 1752(a)(1) requires that the

3

defendant knew that he was entering or remaining in a restricted building or grounds without lawful authority to do so); *United States v. Elizalde,* 700 F. Supp.3d 244, 247 (D.D.C. 2023) (Section 1752(a)(1) requires that the defendant knew he was entering into or remaining in a restricted area and that he lacked legal authority to do so.).

As a matter of law, a person acts "knowingly" if he realizes what he is doing, is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. *E.g., United States v. Barnett,* Case No. 21-cr-38-CRC, Final Jury Instructions, ECF No. 158 at 10, 23 (D.D.C. January 24, 2023).[2]

The legal element "knew" (and similar terms such as "knowingly" or "with knowledge") sets forth a ***subjective*** standard which requires actual knowledge ***and does not*** implement a lower, ***objective*** standard which would merely require that the defendant, based on all the facts, "should have known" about the facts or statutory elements that make his conduct violative of the statute. *E.g., Griffin,* 119 F.4th at 1010 ("By separately requiring proof of a defendant's subjective awareness that the area was 'posted, cordoned off, or otherwise restricted,' Congress ensured that unwitting trespassers would not be punished."); *Groseclose,* Slip Op. at 5-9.

In *Groseclose,* the court made clear that to meet the *mens rea* requirement of Sections 1752(a)(1) and (2) (and therefore in Sections 5104(e)(2)(D) and (G)), the defendant ***must have known*** that he was entering a posted, cordoned off, or otherwise restricted area. Slip Op. at 5-9. In footnote 3 on page 19 of its Slip Opinion, the court observed in *Groseclose* that Congress re-cast Section 1752 as an aggravated offense and that, by its terms, it "allow[s] some wrongdoers

---

[2] The *Barnett* Court articulated its definition of the statutory term "knowingly" in the context of that term's meaning as it appears in Section 5104(e)(2)(G). ECF No. 158 at 23. That same definition of "knowingly" should be applied to the knowledge element in Sections 1752(a)(1), 1752(a)(2), and 5104(e)(2)(D).

who ***unwittingly*** trespass or cause havoc around a Secret Service protectee to escape the provisions' ambit[.]" Slip Op. at 19 n. 3 (emphasis added). By this observation, and particularly by its use of the modifier "unwittingly" in it, the court made clear that actual knowledge is a required element of the statute.

The court expressly made clear in *Groseclose* its understanding and construction of Section 1752(a)(1) as being inapplicable to reckless or negligent presence in a restricted area or ground: "Congress thought it inappropriate to punish those who recklessly or negligently find themselves in a 'restricted area or ground'" . . . . Slip Op. at 13. In that passage, the court takes it as a clearcut given that Section 1752(a)(1)'s intent/knowledge requirement requires that the defendant has entered or remained in an area with actual, subjective knowledge that the area is restricted, and does not encompass a negligent or reckless entry in to such a restricted area. *See also Elizalde*, 704 F. Supp. 3d at 251 (Congress could have written Section 1752 more expansively to encompass persons who "negligently" or "recklessly" enter a restricted area but chose not to do so); *Barnett*, ECF No. 158 at 10, 23 (knowledge element is not met if the defendant acted through ignorance, mistake, or accident).

As noted above, the D.C. Circuit recited the same requirement in *Griffin*. 119 F.4th at 1010 ("By separately requiring proof of a defendant's subjective awareness that the area was 'posted, cordoned off, or otherwise restricted,' Congress ensured that unwitting trespassers would not be punished.").

In addition, the D.C. Circuit made three other rulings in *Griffin* which are pertinent here:

First, the court of appeals held that knowingly breaching a restricted area will suffice to meet the first element of Section 1752(a)(1) regardless of whether the defendant knew the basis for the restriction. 119 F.4th at 1003-04, 1009, 1010-12.

5

Second, the majority opinion added that the Capitol building and grounds met the statutory requirement that it was a restricted area even though the crowd had removed the physical barriers to entry and signs announcing the closure prior to the defendant Griffin's arrival. *Id.* at 1009-10. The majority observed that even without stationary physical barriers and signage, an area could be restricted by appropriately positioning police officers or agents. *Id.* at 1010 ("Far from reopening the grounds, law enforcement officers remained onsite battling to secure them.").

Third, the majority affirmed the district court's finding that the defendant knew he was breaching a restricted building and grounds because there was sufficient evidence from the defendant's own mouth that he knew the Capitol building and grounds were restricted, including comments that "we're in now", that he needed to obscure his identity, and that he would wait until the crowd broke down a door to ascend the inaugural stage. *Id.* at 1006-07. In addition, on January 7, 2021, the defendant made comments indicating his knowledge that the inaugural stage at the Capitol had been restricted. *Id.* at 1007, 1010. In the following week, the defendant made further comments indicating that he knew the Capitol grounds and the inaugural stage were restricted. *Id.* at 1008, 1010. Viewed in the light most favorable to the government – as required by the standard of review – this was sufficient to sustain the district court's verdict. *Id.* at 1011.

The evidence in the case at bar will not show statements by Defendant MASSAQUOI like the defendant's statements in *Griffin* by which Griffin incriminated himself. Defendant MASSAQUOI will show that even under the D.C. Circuit's *Griffin* decision, he lacked any subjective knowledge that he was entering an area, ground, or building that had been posted, cordoned off, or otherwise restricted.

Moreover, Defendant MASSAQUOI will also show that he lacked any subjective knowledge that he was entering or remaining in a restricted building or grounds without lawful

6

authority to do so. To the contrary, the evidence will show that he subjectively and very firmly believed that he had lawful authority to be in the Capitol grounds and building on January 6, 2021.

At bottom, the government cannot establish a violation of Section 1752(a)(1) unless it can prove beyond a reasonable doubt (i) that Defendant Massaquoi subjectively knew that the Capitol building and grounds were posted, cordoned off, or otherwise restricted; *and* (ii) that he entered or remained in the Capitol grounds or building with the subjective knowledge and belief that he had no lawful authority to be there.

B. Section 1752(a)(2)

18 U.S.C. § 1752(a)(2) requires proof beyond a reasonable doubt that the defendant knowingly engaged in disorderly or disruptive conduct in or within proximity to a restricted area and that he acted with specific intent to impede and disrupt the orderly conduct of Government business and official functions, as discussed below.

Use of the term "knowingly" at the beginning of Section 1752(a)(2) requires proof beyond a reasonable doubt of at least two critical elements:

- First, that Defendant MASSAQUOI knew that he was engaging in disorderly or disruptive conduct; and

- Second, that Defendant MASSAQUOI knew that he was engaging in disorderly or disruptive conduct in (or in prohibited proximity to) a restricted building or grounds.

*Samsel,* ECF No. 345 at 31; *United States v. Hostetter,* 2023 WL 4539842 at *5 (D. D.C. July 13, 2023); *Elizalde,* 700 F. Supp.3d at 247.

In *United States v. Kelley,* 2024 WL 4708086 (D.D.C. Nov. 7, 2024), in the context of Section 1752(a)(2), the court held that "conduct is disorderly if, viewed in the circumstances in

which it takes place, it is likely to endanger public safety or create a public disturbance." *Id.* at *17, quoting *United States v. Alford,* 84 F.4th 943, 950 (D.C. Cir. 2024). Similarly, conduct is "disruptive" if, "taken in context," it tends "to interfere with or inhibit usual proceedings." *Id.,* quoting *Alford,* 89 F.4th at 951.

As shown with respect to Count One above, statutory terms such as "knew," "knowingly," and "with knowledge" set forth a ***subjective*** standard which requires that the defendant realizes what he is doing, is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. Statutory terms such as "knew," "knowingly," and "with knowledge" ***do not*** implement an objective standard which would merely require that the defendant, based on all the facts, "should have known" about the facts or statutory elements that make his conduct violative of the statute.

Defendant MASSAQUOI will show that he did not know that the Capitol building or grounds was a restricted area and that, while he might have been mistaken, he did not believe his peaceful approach to the Capitol building would tend to disturb the public peace, undermine public safety, or create a disturbance that would interrupt the electoral vote certification proceeding.

In addition, Section 1752(a)(2) expressly requires that the defendant had the specific intent to impede or disrupt the orderly conduct of government business or official functions. *E.g., Samsel,* ECF No. 345 at 31; *Kelley,* 2024 WL 4708086 at *17; *Hostetter,* 2003 WL 4539842 at *5.

Defendant MASSAQUOI will show that he did not intend to impede or disrupt the orderly conduct of Government business and official functions when he was in the Capitol building or on Capitol grounds on January 6, 2021.

Without proof beyond a reasonable doubt that Defendant MASSAQUOI knew he was engaging in disorderly or disruptive conduct in or near a restricted area ***and*** proof beyond a

8

reasonable doubt that he acted with the specific intent to impede or disrupt Congress's electoral vote count, the government cannot prove a violation of Section 1752(a)(2).

III.  Elements to Be Proven by the Government Under Section 5104(e)(2)

Both charges under 40 U.S.C. § 5104(e)(2) require proof beyond a reasonable doubt that the defendant "willfully and knowingly" engaged in the listed prohibited activity. *See, e.g.,* 40 U.S.C. §§ 5104(e)(2)(D), 5104(e)(2)(G); *Samsel,* ECF No. 345 at 34 (re Section 5104(e)(2)(D)). The phrase "willfully and knowingly" has been interpreted by the case law to require that the defendant "intentionally violated a known legal duty." *E.g., Groseclose,* Slip Op. at 8.

In *Groseclose,* in discussing the legislative history of Section 1752(a), the court gave important guidance as to what the word "willingly" adds to "knowingly" in Sections 5104(e)(2)(D) and (G):

> The prior iteration of § 1752(a)(1) made it a crime to "willfully and knowingly . . . enter or remain in any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." . . . The government focuses on the first word, willfully, and construes its subsequent elimination in later versions of the statute as a clear indicator that Congress sought to lower the mens rea requirement. . . . The observation is accurate, so far as it goes. The elimination of "willfully" relieved the government of having to prove that a defendant ***intentionally violated*** a known legal duty to remain outside the restricted area. Yet it is hard to glean from the deletion whether Congress sought to dilute the statute's "knowingly" requirement, which remained in place.

Slip Op. at 8. This passage makes clear that "willfully and knowingly" means the intentional violation of a known legal duty.

Defendant MASSAQUOI will show that prior to being charged in this case, he lacked any subjective knowledge of Sections 5104(e)(2)(D) or (G) or of those statutes' prohibitions against disorderly conduct in a Capitol building or grounds or of picketing, demonstrating, or parading

9

inside the Capitol.³  The evidence will make clear he did not know that he would be violating a legal duty by engaging in the conduct he is charged with here and, *a fortiori,* the government will not be able to prove beyond a reasonable doubt that on January 6, 2021, he intentionally violated a known legal duty.  For this reason, the government cannot prove beyond a reasonable doubt that Defendant MASSAQUOI violated 40 U.S.C. § 5104(e)(2)(D) or § 5104(e)(2) (G).

A. Section 5104(e)(2)(D)

Section 5104(e)(2)(D) also requires proof beyond a reasonable doubt that Defendant MASSAQUOI engaged in disorderly and disruptive conduct in the Capitol building or grounds, that he knew his conduct was disorderly or disruptive, and that he engaged in that conduct with the specific intent to impede, disrupt, or disturb the orderly session of Congress or either House of Congress – here, the electoral vote certification proceeding.  *E.g.,* 40 U.S.C. § 5104(e)(2)(D); *Samsel,* ECF No. 345 at 34; *United States v. Purse,* 2024 WL 4932846 at *6-7 (D.D.C. Dec. 2, 2024); *Kelley,* 2024 WL 4708086 at *19.

In the context of Section 5104(e)(2)(D), this Court defined disorderly or disruptive conduct to include "conduct that tends to disturb the public peace or undermine public safety" or creates a "disturbance that interrupts an event, activity, or the normal course of a process."  *Samsel,* ECF No. 345 at 34.

---

³ The old saw that "ignorance of the law" or a "mistake of law" is no defense to a criminal charge is inapplicable to this case.  In *Rehaif v. United States,* 139 S. Ct. 2191 (2019), the Supreme Court made clear that "a mistake of law ***is*** a defense if the mistake negates the 'knowledge . . . required to establish a material element of the offense.'"  139 S. Ct. at 2198 (emphasis added), quoting Model Penal Code § 2.04 at 27.  The Model Penal Code rule relied on by the Supreme Court in *Rehaif* is squarely applicable here and, *a fortiori,* mistake or ignorance with respect to the statutory elements of Sections 1752(a)(1) and (2) and 5104(e)(2)(D) and (G) that require knowledge constitute a good defense.

Defendant MASSAQUOI will show that his entry into the Capitol building and grounds was peaceful and that he did not believe his peaceful approach and entry into the Capitol building would tend to disturb the public peace, undermine public safety, or create a disturbance that would interrupt the electoral vote certification proceeding.

Defendant MASSAQUOI will also show that he had no knowledge of the standard set forth in *Alford,* or of state law standards relating to breach of the peace relied on in *Alford,* which make the context surrounding a defendant's conduct pertinent to determining whether he engaged in disorderly or disruptive conduct. Without proof beyond a reasonable doubt that Defendant MASSAQUOI knew that he was engaging in disorderly or disruptive conduct on January 6, 2021, the government cannot establish that he violated Section 5104(e)(2)(D).

Moreover, as discussed above with respect to Section 1752(a)(2), Defendant MASSAQUOI will show that he did not act with any intent to impede, disrupt, or disturb Congress's electoral vote count.

And, as discussed above, Defendant MASSAQUOI will show that he did not have any subjective knowledge of Section 5104(e)(2)(D) or its prohibition against disorderly or disruptive conduct in a Capitol building or grounds. He will thereby show that he acted out of ignorance or mistake and did not intentionally violate a known legal duty when he traversed Capitol grounds or when he briefly entered the Capitol building.

Without proof beyond a reasonable of all of the aforesaid elements, the government cannot establish that Defendant MASSAQUOI violated Section 5104(e)(2)(D).

B. Section 5104(e)(2)(G)

Section 5104(e)(2)(G) requires proof beyond a reasonable doubt that Defendant MASSAQUOI paraded, demonstrated, or picketed inside the Capitol building on January 6, 2021

and that in doing so, as discussed above, he intentionally violated a known legal duty. 40 U.S.C. § 5104(e)(2)(G); *Groseclose,* Slip Op. at 7; *Purse,* 2024 WL 4932846 at *6-7; *Kelley,* 2024 WL 4708086 at *20.

In *Samsel,* the Court defined the terms "parade" and "picket" as having their "ordinary meanings" without specifying what those ordinary meanings might be. ECF No. 313 (Substantive Legal Instructions) at 40.

<u>Parading</u>

The Oxford online dictionary defines the verb "parade" as to "walk or march in public in a formal procession or in an ostentatious or attention-seeking way . . . ." ([dictionary definition of parade - Search (bing.com)](#).) The Merriam Webster online dictionary defines the verb "parade" as "to march in or as if in a procession." ([Parade Definition & Meaning - Merriam-Webster](#).)

Applying the ordinary meaning of the term "parading" to Defendant MASSAQUOI's conduct – *i.e.,* that the defendant "walked or marched in public in a formal procession or in an ostentatious or attention-seeking way," the evidence will show that he did not walk or march while inside the Capitol building as if he was in a procession or in an ostentatious or attention-seeking way. As will be seen in DX 124 (the "baked alaska" video) from 55:24-56:32, he entered the Senate Wing doorway, did not leave the immediate area of that doorway, remained inside the building for a total of only 68 seconds during which he used his cell phone (unostentatiously) to video the scene in the area immediately before him, did not engage in any demonstrative conduct, and when instructed by the police to leave the building, promptly and cooperatively went out the same doorway he had entered. There is nothing in the baked alaska video footage which suggests that once inside the building, he walked or marched as if in a formal procession or engaged in ostentatious or attention-seeking conduct.

The government will not be able to prove beyond a reasonable doubt that Defendant MASSAQUOI violated Section 5104(e)(2)(G)'s prohibition against parading in the Capitol.

Picketing

The First Amendment Encyclopedia (online) explains that "[p]icketing occurs when a person or a group of people stands, marches, or patrols inside, in front of, or about any premise with the intent to persuade an occupant or patron of the premise regarding some point of view or to protest an action, attitude, or belief." (Picketing | The First Amendment Encyclopedia) This is the broadest definition of "picketing" we could find on the Internet, as other definitions tend to focus more on labor unions obstructing access to a business as part of a labor dispute. *E.g.,* the Cambridge online dictionary defines "picketing" as "an activity in which a worker or group of workers protest outside a building to prevent other workers from going inside." (PICKETING | definition in the Cambridge English Dictionary)

Applying the broad meaning of "picketing" set forth above to Siaka's conduct inside the Capitol, the "baked alaska" video footage from 55:24-56:32 will show that Siaka did not stand, march, or patrol inside the Capitol. He casually walked into the building through the Senate Wing doorway, used his cell phone to briefly record the police and other persons located just inside the building, did not stand in one place or otherwise try to block access to or impede movement inside the Capitol, did not engage in any expressive conduct that can be fairly characterized as protesting, and politely and cooperatively left the building through the door he entered when asked to do so by the police. Rather than obstructing access to or movement inside the Capitol, Siaka even helped to clear access to the Capitol when he departed by persuading other persons to also follow the police's request that they leave the building.

The government will not be able to prove beyond a reasonable doubt that Defendant MASSAQUOI violated Section 5104(e)(2)(G)'s prohibition against picketing in the Capitol.

Demonstrating

It is well settled that when, as here, a statute does not define a term such as "demonstrates," the courts must look to the term's ordinary meaning. *E.g., United States v. Robertson,* 86 F.4th 355, 365 (D.C. Cir. 2023) (citing cases).

In defining the term "demonstrating" for purposes of Section 5104(e)(2)(G), the Court should strive to set a boundary that is most consistent with the ordinary meaning of "demonstrating" and therefore will be most consistent with the public's everyday understanding. The court made this clear in *Bynum v. United States Capital Police Board,* 93 F. Supp.2d 50 (D.D.C. 2000), when it laid out the standard used by the courts to determine when a statute or regulation is unconstitutionally vague:

> The virtually standardless, broad discretion given to the Capitol Police by this regulation also causes it to be unconstitutionally vague. A law is unconstitutionally vague if it fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, if it fails to provide explicit standards to those who enforce it, or if it operates to inhibit the free exercise of First Amendment freedoms by chilling such exercise by its uncertain meaning. . . . Not only is the standard set forth in the regulation unconstitutionally overbroad because it permits punishment of constitutionally protected conduct, but it is unconstitutionally vague because it subjects the exercise of the right to free speech to "an unascertainable standard." . . . If "men [and women] of common intelligence must necessarily guess at [the regulation's] meaning, it does not provide fair notice to citizens of what is prohibited. . . . The regulation gives neither fair notice nor fair warning to those who may be considered by the Capitol Police to be violating its prohibitions and therefore may chill citizens' exercise of their First Amendment freedoms in the United States Capitol. The regulation as written cannot survive plaintiff's due process vagueness challenge. . . .

*Bynum,* 93 F. Supp. 2d at 59 (citations omitted).

In *Samsel,* this Court defined "demonstrates" as any sort of conduct that would disrupt Congressional business. *Samsel,* ECF No. 313 at 40. The Court's definition of "demonstrates" in

*Samsel* is true to the statute's purpose of preventing disruptive conduct but is too disconnected from the ordinary meaning of the term itself (and therefore vague and overbroad) when the term is defined as any sort of conduct that would disrupt Congressional business.

Defendant MASSAQUOI proposes a definition of "demonstrates" (as it is used in Section 5104(e)(2)(G)) to mean "any sort of *expressive* conduct that would disrupt Congressional business." That proposed definition would more closely adhere to the ordinary meaning of the term as well as the district court's decision in *Bynum.* Defining "demonstrates" in that way would provide more definite guidance to the public and the courts as to what sort of conduct violates the statute, an important objective in defining the outer boundaries of a statute that potentially impinges on constitutionally-protected speech and religious activity.

Webster's Third New International Dictionary (Unabridged), Merriam-Webster at 600 (2002), defines "demonstrate" as follows: "to make a public display of sentiment for or against person or cause." Inherent in this definition is some form of expressive conduct.

The vocabulary.com online dictionary defines "demonstrating" as to march in protest. ([Demonstrate - Definition, Meaning & Synonyms | Vocabulary.com](#))

These definitions make clear that the ordinary meaning of "demonstrating" involves not just any conduct, but *expressive* conduct that shows one's feelings, such as marching in protest.

An easily-understood definition of "demonstrating" is readily found not only in these dictionaries, but in the *Bynum* court's use of the phrase **"expressive conduct"** to define "demonstrating." There were two categories of conduct at issue in *Bynum,* expressive conduct that would be disruptive and expressive conduct such as prayer that potentially would not be disruptive. But it was clear at bottom that both of the categories of conduct that might qualify as unlawful "demonstrating" were **expressive conduct**, consistent with the ordinary meaning of the term

"demonstrating." Requiring that challenged conduct be **expressive** to meet the statute's prohibition of "demonstrating" hews most closely to the dictionary definition/ordinary meaning of "demonstrating" and thereby best satisfies the constitutional prohibition against undue vagueness.[4]

It is also most consistent with the other, immediately neighboring elements of Section 5104(e)(2)(G) – *i.e.,* "parading" and "picketing." That makes Defendant MASSAQUOI's proposed definition more likely to be correct under *noscitur a sociis,* an established rule of statutory construction, which provides that a word is known by the company it keeps and avoids ascribing to one word a meaning so broad that it is inconsistent with its accompanying words. *See, e.g., Alford,* 89 F.4th at 952.

Defendant MASSAQUOI's evidence in this case will show that his actions – *i.e.,* walking into the building, using his cell phone to briefly record the police and other persons located just inside the building, doing nothing to block access to or impede movement inside the Capitol, and politely and cooperatively leaving when asked to do so by the police – did not show or express his opinion or feelings sufficiently to satisfy the "demonstrating" element in Section 5104(e)(2)(G).

Under Defendant MASSAQUOI's proposed definition of "demonstrating" as requiring "expressive conduct," the government will not be able to show that Defendant MASSAQUOI engaged in demonstrating inside the Capitol building on January 6, 2021.

---

[4] In *United States v. Young,* 2024 WL 2891620, 2024 U.S. Dist. LEXIS 102205, at *8 (D. D.C. June 10, 2024), the Magistrate construed "parade" or "demonstrate" to encompass "tak[ing] part in a 'public manifestation' in furtherance of 'some political or other cause.'" That definition implicitly includes in it the concept that the prohibited conduct is "expressive," inasmuch as it "manifests" and thereby conveys some sort of message. Even more clearly than the Magistrate's definition in *Young,* the definition of "demonstrating" proposed here by Defendant MASSAQUOI is consistent with the ordinary meaning of the term and the decision in *Bynum.*

While the evidence will show that Defendant MASSAQUOI did not engage in picketing, parading, or demonstrating inside the Capitol building, if the Court were to find that he did so, Section 5104(e)(2)(G) further requires proof beyond a reasonable doubt that in doing so, Defendant MASSAQUOI intentionally violated a known legal duty not to picket, parade, or demonstrate inside the Capitol building. *Groseclose,* Slip Op. at 8 ("willfully and knowingly" element requires that the defendant intentionally violated a known legal duty).

The government's obligation under Section 5104(e)(2)(G) to prove that Defendant MASSAQUOI had subjective knowledge of what constitutes unlawful parading, picketing, or demonstrating inside the Capitol is made even clearer by the Final Jury Instructions in *Barnett.* For purposes of Count seven in *Barnett,* which charged the defendant with willfully and knowingly parading, picketing, or demonstrating in a Capitol building under Section 5104(e)(2)(G), the court defined "knowingly" as follows:

> A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, **and does not act through ignorance, mistake, or accident.**

ECF No. 158 at 10, 23 (emphasis added). The key wording in this instruction makes clear that a person does not act "knowingly" if he acts through ignorance or mistake.

This statement of the law establishes that for the government to prove the "willfully and knowingly" element of Section 5104(e)(2)(G) – *i.e.,* that the defendant intentionally violated a known legal duty not to parade, picket, or demonstrate inside the Capitol – the government must prove beyond a reasonable doubt that the defendant subjectively realized/knew that it would constitute parading, picketing, or demonstrating in violation of Section 5104(e)(2)(G) if he walked in the Senate wing door, stopped just inside the doorway, briefly used his cell phone to video the scene in front of him, avoided blocking others' movement around him, and when asked by the

17

police, promptly and politely left the building after only 68 seconds inside and used the same doorway he had entered.

The evidence will show that Defendant MASSAQUOI lacked any knowledge of Section 5104(e)(2)(G) or its prohibition of parading, picketing, or demonstrating inside the Capitol. At most, the evidence will show that Defendant MASSAQUOI acted out of ignorance or mistake, which is insufficient to prove that he intentionally violated a known legal duty.

For all of these reasons, the government will not be able to prove beyond a reasonable doubt that Defendant MASSAQUOI violated Section 5104(e)(2)(G).

In concluding, Defendant MASSAQUOI hastens to reiterate and emphasize that the old saw that "ignorance of the law" or a "mistake of law" is no defense to a criminal charge is inapplicable in this case. In *Rehaif v. United States,* 139 S. Ct. 2191 (2019), the Supreme Court made clear that "a mistake of law *is* a defense if the mistake negates the 'knowledge . . . required to establish a material element of the offense.'" 139 S. Ct. at 2198 (emphasis added), quoting Model Penal Code § 2.04 at 27. The Model Penal Code rule relied on by the Supreme Court in *Rehaif* is squarely applicable here and, *a fortiori,* mistake or ignorance with respect to each of the statutory elements of Sections 1752(a)(1), 1752(a)(2), 5104(e)(2)(D), and 5104(e)(2)(G) that expressly requires knowledge (*e.g.,* that a building or area was legally restricted, or that a defendant lacked lawful authority, or that he owed a particular legal duty) constitutes a legally sufficient defense.

IV.     Defendant MASSAQUOI's Selective Prosecution Motion

Defendant MASSAQUOI"S motion to dismiss all charges with prejudice on grounds of selective prosecution (ECF No. 28) has not been ruled on by the Court and by itself is dispositive

of this case. Defendant MASSAQUOI incorporates that motion herein by reference and urges the Court to grant that motion to dismiss *instanter*.

Dated: December 12, 2024                     Respectfully submitted,

/s/ Stephen L. Sulzer
Stephen L. Sulzer
D.C. Bar No. 340943
**STEPHEN L. SULZER PLLC**
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel.: 703-899-2903 (direct)
        202-499-2301 (ofc main line)
Fax: 202-558-5101
Email: ssulzer@sulzerpllc.com

JONATHAN GROSS
Bar ID: MD0162
2833 Smith Ave., Suite 331
Baltimore, MD 21209
Tel.: (443) 813-0141
Email: jonathansgross@gmail.com

*Attorneys for Defendant
Siaka Tonia Massaquoi*

## CERTIFICATE OF SERVICE

I certify that on the 12th day of December 2024, a true copy of the foregoing Defendant Siaka Massaquoi's Pretrial Statement has been filed electronically with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that Counsel for the United States in this case is a registered CM/ECF user and that service will be accomplished by the CM/ECF system. I further certify that a true copy of the foregoing Defendant Siaka Massaquoi's Pretrial Statement was served via email on the United States through Assistant United States Attorneys Jake Elijah Struebing at Jake.Struebing@usdoj.gov and Nialah S. Ferrer at nialah.ferrer@usdoj.gov.

/s/ *Stephen L. Sulzer*
Stephen L. Sulzer (DC Bar No. 340943)
**STEPHEN L. SULZER PLLC**
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel.: 703-899-2903 (direct)
        202-499-2301 (ofc main line)
Fax: 202-558-5101
Email: ssulzer@sulzerpllc.com

*Attorney for Defendant Siaka Tonia Massaquoi*